[Cite as *State ex rel. Ross v. Crawford Cty. Bd. of Elections*, 125 Ohio St.3d 438, 2010-Ohio-2167.]

THE STATE EX REL. ROSS *v.* CRAWFORD COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Ross v. Crawford Cty. Bd. of Elections*,

125 Ohio St.3d 438, 2010-Ohio-2167.]

*Mandamus — Prohibition — Writs sought to compel board of elections to count provisional ballot and to prevent relator's removal as eligible voter — Board's hearing on challenges to voter eligibility was a quasi-judicial hearing not subject to Sunshine Law — Writs denied.*

(No. 2010-0765 — Submitted May 13, 2010 — Decided May 18, 2010.)

IN PROHIBITION AND MANDAMUS.

_____

**Per Curiam.**

{¶ 1}  This is an expedited election action for a writ of prohibition to prevent respondents, the Crawford County Board of Elections and its members, from acting or relying on their decision to remove relator, Daniel Ross, as an eligible voter at an address in the city of Bucyrus, Ohio, including failing to count his vote cast by provisional ballot for the May 4, 2010 primary election, and for a writ of mandamus to compel the board and its members to count his provisional ballot and to place his name on the voter-registration roll for the Bucyrus address as if it had never been removed.  Because the board of elections and its members neither abused their discretion nor clearly disregarded applicable law by removing Ross as an eligible voter at an address in the city of Bucyrus, we deny the writs.

**Facts**

{¶ 2}  Relator, Daniel Ross, is the mayor of the city of Bucyrus, Ohio. Ross lived at 607 Rogers Street in Bucyrus until May 2008, when he separated from his wife and left the marital domicile.  At that time, Ross moved with his

girlfriend, Joy Frost, and her children into her home at 844 Rogers Street in Bucyrus.

{¶ 3}   In August 2009, Frost bought a house at 3029 Alan Road, which is located outside the Bucyrus city limits.  Frost planned on remodeling the Alan Road house before she and her family moved in, and in the fall of 2009, Frost listed her Rogers Street home for sale.

{¶ 4}   In November 2009, Frost and Ross moved to the Alan Road house, and Frost rented her Rogers Street house to her niece, Ayndria Lacey.  Lacey paid Frost $400 a month in rent and lived in the house with her four-year-old daughter until April 2010.  Lacey had exclusive use of the Rogers Street house during her tenancy.  Neither Ross nor Frost kept any possessions in the house, but they did keep some personal items in the garage.  Although the utilities for the 844 Rogers Street home were in Ross's name, Lacey paid the utilities while she stayed there.  Ross's mail was still sent to 844 Rogers Street, and he went there to pick it up and to do repairs and other maintenance.  In this same period, the Alan Road house had a fire, which forced Frost, Ross, and the children to stay at a hotel for a night.  Ross is paying the mortgage on the 844 Rogers Street property.

{¶ 5}   Matthew Crall, the chairman of the Crawford County Republican Party Executive Committee, received several complaints from persons affiliated with both major political parties that Ross had moved out of Bucyrus, and the city council asked Crall to investigate the matter.  Crall discovered that the 844 Rogers Street house had been listed for sale by its owner around November 1, 2009, and that Lacey, Frost, and Ross were all registered to vote there.

{¶ 6}   In April 2010, nine different challenges were made to Ross's voter registration at 844 Rogers Street in Bucyrus.  The Crawford County Board of Elections could not determine whether Ross resided at the Rogers Street address based on its records, so on April 14, the board of elections held a quasi-judicial hearing pursuant to R.C. 3503.24(B) on the challenges to Ross's right to vote at

the Bucyrus address. The hearing was open to the public, and its stated purpose was to determine whether Ross was properly registered at 844 Rogers Street or whether he should be removed from the voter-registration roll.

{¶ 7} At the time of the hearing, Ross lived with Frost at her Alan Road home outside the city of Bucyrus, and Lacey lived at Frost's 844 Rogers Street home in Bucyrus. Ross and Frost testified that Ross's stay at the Alan Road house was temporary until Lacey either went back home to her husband or bought a new home. According to Ross, when he moved to the Alan Road house in November 2009, it was his intention to return to the Rogers Street property.

{¶ 8} At the conclusion of the submission of testimonial and documentary evidence and argument, the board's counsel stated that the board members would retire from the public hearing to deliberate in private in another room. The board did not take a roll-call vote to move into executive session when it retired to deliberate in private. When the board reconvened in public, its attorney announced that the board had upheld the challenges by determining that Ross was not a resident at 844 Rogers Street in Bucyrus for voting purposes and that he was not a qualified elector at that residence. The attorney further stated that the board would subsequently issue a final written decision on the matter. The board did not vote on the matter during the public portion of the hearing.

{¶ 9} On April 23, after Lacey moved from her aunt's home, Ross moved back into the home at 844 Rogers Street in Bucyrus.

{¶ 10} Three days later, Ross was given a copy of the board's written decision on his voter-registration status. In the unanimous, written decision, the board summarized the evidence adduced at the hearing and held that Ross did not reside at the 844 Rogers Street address in Bucyrus:

{¶ 11} "At the conclusion of the hearing, the Crawford County Board of Elections retired into Executive Session for the purpose of deliberating on the evidence presented at the hearing. Upon a review of all the evidence presented,

including without limitation the above evidence, the Board ruled that for voting purposes, Dan Ross does not reside at 844 Rogers Street Bucyrus, Ohio 44850. The Board therefore removes Dan Ross as an eligible voter for the purposes of voting at 844 Rogers Street Bucyrus, Ohio 44820."

{¶ 12} On April 27, Ross submitted a letter to the board of elections notifying it of his return to the Rogers Street property and his desire to confirm that address for voter-registration purposes. Ross was informed that he had been removed from the voter-registration roll and that he was ineligible to vote at the May 4, 2010 election. Ross then requested and received a provisional ballot for the May 4 election, which he cast. But it is his understanding that the board of elections will not count his vote unless a court orders the board to do so. On that same date, Ross received a copy of the transcript of the board's April 14 hearing.

{¶ 13} A few days later, Ross filed this expedited election action challenging the board's decision. Ross requests (1) a writ of prohibition preventing the board and its members from acting or relying in any way on their decision to remove Ross as an eligible voter at the Rogers Street address, including failing to count his provisional ballot for the May 4 primary election and (2) a writ of mandamus to compel the board and its members to count Ross's vote cast on his provisional ballot and to place his name on the voter-registration list for the Rogers Street address as if it had never been removed. The board and its members submitted an answer, and the parties submitted briefs pursuant to S.Ct.Prac.R. 10.9.

{¶ 14} This cause is now before the court for our consideration of the merits.

## Legal Analysis

### Prohibition and Mandamus

{¶ 15} Ross seeks extraordinary relief in prohibition and mandamus to overturn the board's decision determining that he is not a qualified elector at 844

Rogers Street in Bucyrus. Because of the limited time in which the board of elections must complete the canvass of election returns from the May 4 election, see R.C. 3505.32(A),[1] Ross has established that he lacks an adequate remedy in the ordinary course of the law. See *State ex rel. Owens v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1374, 926 N.E.2d 617, ¶ 25 (because of proximity of election, relator established that he lacked an adequate remedy in the ordinary course of law); *Dzina v. Celebrezze*, 108 Ohio St.3d 385, 2006-Ohio-1195, 843 N.E.2d 1202, ¶ 12 ("Neither mandamus nor prohibition will issue if the party seeking extraordinary relief has an adequate remedy in the ordinary course of law").

{¶ 16} Ross has also established that the board of elections exercised the quasi-judicial authority necessary for the requested writ of prohibition, because the board was required to hold a hearing resembling a judicial trial on the challenges to Ross's eligibility to vote pursuant to R.C. 3505.19 and 3503.24(B). See *State ex rel. Tremmel v. Erie Cty. Bd. of Elections*, 123 Ohio St.3d 452, 2009-Ohio-5773, 917 N.E.2d 792, ¶ 16 (hearing held on challenge to a registered elector's right to vote constitutes a quasi-judicial proceeding); *State ex rel. LetOhioVote.org v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1895, 926 N.E.2d 617, ¶ 12 (relators seeking writ of prohibition must establish that respondent exercised judicial or quasi-judicial power).

{¶ 17} For the remaining requirements for the requested writs of prohibition and mandamus, " '[i]n extraordinary actions challenging the decisions of * * * boards of elections, the standard is whether they engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions.' " See *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-

---

1. Under R.C. 3505.32(A), the board of elections generally must complete the canvass of election returns not later than 21 days after the election, and 81 days after the election, the canvass will be deemed final.

Ohio-5327, 915 N.E.2d 1215, ¶ 9, quoting *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11.

{¶ 18} Ross claims that the board of elections abused its discretion and clearly disregarded applicable law by upholding the challenges to his voter registration at 844 Rogers Street in Bucyrus.

*R.C. 121.22 – Sunshine Law*

{¶ 19} Ross first asserts that the board of elections abused its discretion and clearly disregarded R.C. 121.22 by failing to vote in public at the April 14 hearing to hold an executive session to deliberate on the matter and then failing to publicly vote after the deliberations.

{¶ 20} "Ohio's 'Sunshine Law,' R.C. 121.22, requires that public officials, when meeting to consider official business, conduct those meetings in public." *State ex rel. Cincinnati Post v. Cincinnati* (1996), 76 Ohio St.3d 540, 542, 668 N.E.2d 903. Under R.C. 121.22(C), "[a]ll meetings of any public body are declared to be public meetings open to the public at all times," while R.C. 121.22(B)(2) defines "meeting" as "any prearranged discussion of the public business of the public body by a majority of its members." R.C. 121.22(G) provides that "the members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of" certain specified matters, including "[c]onferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action." R.C. 121.22(G)(3). Finally, R.C. 121.22(H) provides that a "resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body" and that a "resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for the purpose specifically authorized in division (G) or (J)

of this section and conducted at an executive session held in compliance with this section."

{¶ 21} For the following reasons, the board of elections neither abused its discretion nor clearly disregarded R.C. 121.22 by failing to vote in public at its April 14 hearing to hold an executive session to deliberate on the challenges to Ross's right to vote at the 844 Rogers Street address and by failing to vote in public to decide the challenges.

{¶ 22} First, the Sunshine Law applies to meetings but not to certain hearings. *Matheny v. Frontier Local Bd. of Edn.* (1980), 62 Ohio St.2d 362, 368, 16 O.O.3d 411, 405 N.E.2d 1041. In *Matheny*, we held that R.C. 121.22 authorized a school board to conduct private deliberations upon the renewal of a limited teaching contract because nothing in that section granted a nontenured teacher the right to demand that those deliberations be made in public. In so holding, we emphasized that the General Assembly intended that a "meeting" for purposes of R.C. 121.22 had a different meaning from "hearing":

{¶ 23} "Throughout R.C. 121.22, the legislature employed the term 'meeting' to designate 'any prearranged discussion of the public business of the public body by a majority of its members.' R.C. 121.22(B)(2). Since the General Assembly specifically defined, and extensively employed, the term 'meeting' in drafting this statute, and since the term 'hearing' appears only twice in the [former version of the] statute, both times in reference to situations where a formal hearing is statutorily mandated, we must assume that these terms were intended to have altogether different meanings." Matheny, 62 Ohio St.2d at 368, 16 O.O. 3d 411, 405 N.E.2d 1041.

{¶ 24} Similarly, the current version of R.C. 121.22 requires that all meetings of a public body be "public meetings open to the public at all times" and refers to "hearing" only sporadically, usually to those hearings statutorily required. As an appellate court held in construing *Matheny*, "even though a

public body must open all its meetings to the public, there is a category of gatherings, called 'hearings,' which do not have to be public." *In re Petition for Annexation of 162.631 Acres* (1988), 52 Ohio App.3d 8, 12, 556 N.E.2d 200. "R.C. 121.22 is only applicable to public bodies performing public functions at public meetings." *Walker v. Muskingum Watershed Conservancy Dist.*, Tuscarawas App. No. 2007 AP 010005, 2008-Ohio-4060, 2008 WL 3307126, ¶ 27.

{¶ 25} Second, and more pertinent to this case, "a quasi-judicial hearing is not a meeting for purposes of this [R.C. 121.22] definition, and hence is not subject to the open meeting requirements." Fenton and McNeil, Ohio Administrative Law Handbook and Agency Directory (2009-2010 Ed.), Section 8:18. That is, "the Sunshine Law does not apply to adjudications of disputes in quasi-judicial proceedings." *TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision* (1998), 81 Ohio St.3d 58, 62, 689 N.E.2d 32. In *TBC Westlake*, we held that the adjudication by the Board of Tax Appeals ("BTA") of a valuation case was a quasi-judicial proceeding rather than a meeting and that the BTA was therefore not required under the Sunshine Law to furnish parties with copies of its attorney-examiner's report:

{¶ 26} "The BTA's adjudication is a quasi-judicial proceeding that settles a 'justiciable dispute requiring evaluation and resolution.' Although the BTA opens its hearings to the public under Ohio Adm.Code 5717-1-15(D), it, like all judicial bodies, requires privacy to deliberate, *i.e.*, to evaluate and resolve, the disputes. This privacy frees the BTA from the open pressure of the litigants as it contemplates the case. Privacy provides an opportunity for candid discussion between board members and staff on the legal issues and the facts so the BTA can reach a sound decision. For these reasons, the Sunshine Law does not apply to adjudications of disputes in quasi-judicial proceedings, such as at the BTA." (Citations omitted.) Id. at 62, 689 N.E.2d 32.

**{¶ 27}** As discussed previously, the board's hearing on the challenges to Ross's eligibility to vote pursuant to R.C. 3505.19 and 3503.24(B) was a quasi-judicial hearing rather than a meeting. *Tremmel*, 123 Ohio St.3d 452, 2009-Ohio-5773, 917 N.E.2d 792, ¶ 16; see also *Walker*, 2008-Ohio-4060, 2008 WL 3307126, ¶ 27 (in general, "R.C. 121.22 is not applicable to judicial bodies, or judicial or quasi-judicial functions"); see generally Gotherman, Babbit, and Lang, 1 Local Government Law – Municipal (1st Ed.2004) 163, Section 6.2.

**{¶ 28}** Third, the cases relied on by Ross are distinguishable. Ross relies primarily on *Angerman v. State Med. Bd. of Ohio* (1990), 70 Ohio App.3d 346, 352, 591 N.E.2d 3, in which the Tenth District Court of Appeals concluded that "the deliberations of a quasi-judicial administrative tribunal as to the action to be taken following a public hearing upon charges against a licensee need not be open to either the licensee or the public, *although the final action or vote of the quasi-judicial tribunal must be conducted in an open meeting*." (Emphasis added.) In that case, however, the only issue before the court of appeals was whether deliberations of a quasi-judicial tribunal were subject to R.C. 121.22. As the same appellate court recognized in a subsequent case, "any other statement by the court [in *Angerman*] relating to orders and application of R.C. 121.22 thereto was dicta." *Jones v. Liquor Control Comm.* (Dec. 20, 2001), Franklin App. No. 01AP-344, 2001 WL 1631333, *6, fn. 3. Similarly, Ross's reliance on *Groff-Knight v. Bd. of Zoning Appeals of Liberty Twp.* (June 14, 2004), Delaware App. No. 03CAH08042, 2004 WL 3465744, is misplaced because the sole issue before the court of appeals in that case involved the applicability of R.C. 121.22 to deliberations of a board of zoning appeals on an application for a conditional-use permit, and any discussion concerning whether a motion and vote on the application needed to be in public at an open meeting was dicta.

**{¶ 29}** Fourth, it has been held that when the proceeding is quasi-judicial, the final action resulting from the proceeding need not be adopted at an open

meeting. *Jones*, 2001 WL 1631333, at *6 ("The order finding appellant in violation of certain statutory and regulatory provisions and imposing the penalty of revocation [of liquor permits] was pursuant to the commission's quasi-judicial functions * * *. * * * Because the commission was acting as a quasi-judicial body in this matter, it was not subject to R.C. 121.22"). Similarly, in *State ex rel. Eaton v. Erie Cty. Bd. of Elections*, Erie App. No. E-05-065, 2006-Ohio-966, 2006 WL 513910, the Sixth District Court of Appeals held that because the challenge proceeding in R.C. 3505.19 and 3503.24 is quasi-judicial, the board of elections is not required to comply with R.C. 121.22 even though the board appeared to conform to the exception in R.C. 121.22(G)(3) for holding an executive session. Id. at ¶ 66-67 and fn. 3.

{¶ 30} The defect in Ross's interpretation of R.C. 121.22 is that he treats a quasi-judicial proceeding as an unspecified reason for a public body to hold an executive session under R.C. 121.22(G). But because a quasi-judicial proceeding like the one required for the challenges to Ross's right to vote at the Rogers Street address is not a meeting for purposes of R.C. 121.22, the Sunshine Law is inapplicable from the outset. See R.C. 121.22(C) ("All *meetings* of any public body are declared to be public meetings open to the public at all times" [emphasis added]); see also *Matheny*, 62 Ohio St.2d at 368, 16 O.O.3d 411, 405 N.E.2d 1041, and *TBC Westlake*, 81 Ohio St.3d at 61-62, 689 N.E.2d 32.

{¶ 31} Finally, although it may be preferable from a general policy standpoint that boards of elections vote and decide challenges in public, at open meetings, "[j]udicial policy preferences may not be used to override valid legislative enactments, for the General Assembly should be the final arbiter of public policy." *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672; *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 34.

**{¶ 32}** Therefore, because R.C. 121.22 did not apply to the elections board's quasi-judicial challenge proceeding involving Ross, the board neither abused its discretion nor clearly disregarded the Sunshine Law by failing to publicly vote on whether to adjourn the public hearing to deliberate and by failing to publicly vote on the challenges following deliberations.

*Residency Determination*

**{¶ 33}** Ross next argues that the board of elections abused its discretion and disregarded applicable law by determining that he was not a resident of 844 Rogers Street in Bucyrus based on the evidence introduced at the April 14 hearing.

**{¶ 34}** R.C. 3503.02 specifies the rules for determining the residence of a person who is registered to vote and provides:

**{¶ 35}** "All registrars and judges of elections, in determining the residence of a person offering to register or vote, shall be governed by the following rules:

**{¶ 36}** "(A) That place shall be considered the residence of a person in which the person's habitation is fixed and to which, whenever the person is absent, the person has the intention of returning."

**{¶ 37}** R.C. 3503.02 "provides that the person's intent is of great import," *State ex rel. Stine v. Brown Cty. Bd. of Elections*, 101 Ohio St.3d 252, 2004-Ohio-771, 804 N.E.2d 415, ¶ 15, and thus "emphasizes the person's intent to make a place a fixed or permanent place of abode." *State ex rel. Duncan v. Portage Cty. Bd. of Elections*, 115 Ohio St.3d 405, 2007-Ohio-5346, 875 N.E.2d 578, ¶ 11.

**{¶ 38}** There was conflicting evidence before the board of elections concerning Ross's legal residence for purposes of voting. Although Ross claims to have been a resident of 844 Rogers Street in the city of Bucyrus at the time of the board's April 14 hearing on the challenges to Ross's right to vote at that address, the evidence introduced at the hearing established that he is not the titled owner of the Rogers Street property, that the property had been listed for sale by

the owner – Ross's girlfriend – in the fall of 2009, that the property had been rented for the exclusive use of the owner's niece from November 2009 through the date of the hearing, that Ross had moved out of the Rogers Street house and lived with his girlfriend and her children at a house outside the city during the rental period, that Ross did not keep day-to-day personal items in the habitable portion of the Rogers Street house, and that Ross, his girlfriend, and her children stayed at a hotel when the Alan Road home caught fire.

{¶ 39} Notably, although Ross relies on evidence at the hearing that he was paying the mortgage on the Rogers Street property and had performed repairs and general maintenance on the property as evidence of his intent to return to the property, these are acts that a landlord normally performs on rental property. And although the utilities were in Ross's name, his girlfriend's niece paid them during her tenancy.

{¶ 40} Further, Ross's reliance on his posthearing return to the Rogers Street property as evidence of the board's error is misplaced. "[A] claim that the board of elections abused its discretion * * * [can]not be based on evidence that was never presented to it." *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 40.

{¶ 41} "We will not substitute our judgment for that of a board of elections if there is conflicting evidence on an issue." *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 185, 724 N.E.2d 771. We have applied this principle to deny writs challenging decisions of boards of elections on residence issues. *Stine*, 101 Ohio St.3d 252, 2004-Ohio-771, 804 N.E.2d 415, ¶ 21; *Duncan*, 115 Ohio St.3d 405, 2007-Ohio-5346, 875 N.E.2d 578, ¶ 16.

{¶ 42} Finally, our decision in *Husted*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, does not require a different result. In that case, we granted a writ of mandamus to compel a board of elections to find that the relator

was a Montgomery County resident for election purposes despite his leaving for Franklin County for the temporary purpose of serving as a state legislator. In *Husted*, we emphasized that the secretary of state and the board of elections had failed to comply with the statutory registration-cancellation provisions and that Section 3, Article II of the Ohio Constitution supported the relator's claimed residency in Montgomery County because of the uncontroverted evidence that his presence in Franklin County was primarily because of his employment as a state legislator. Id. at ¶ 12-16, 29. This case involves no comparable facts. That is, there is no evidence that the board of elections failed to follow the applicable registration-cancellation procedures. And Ross's employment as mayor of Bucyrus did not require him to move outside the city during his term of office. In fact, his employment required him to remain a resident of the city at all times during his term in office. See R.C. 3.15(A)(3).

{¶ 43} Therefore, the board of elections neither abused its discretion nor clearly disregarded applicable law by unanimously concluding that Ross is not a resident of the 844 Rogers Street address in Bucyrus for purposes of voting. And Ross would not have been entitled to vote as a resident at the Alan Road home because he would not "have resided in the county and *precinct* where [he was] *registered* for at least thirty days at the time of the [May 4] election." (Emphasis added.) R.C. 3503.06(A); see also *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 47-50.

### Conclusion

{¶ 44} Based on the foregoing, Ross has not established his entitlement to the requested extraordinary relief in prohibition and mandamus. Therefore, any discussion of other potential issues, like laches, is unnecessary. We deny the writs.

Writs denied.

BROGAN, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., concurs in judgment only.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for PFEIFER, J.

_____

Chester, Willcox & Saxbe, L.L.P., Donald C. Brey, Elizabeth J. Watters, and Deborah A. Scott, for relator.

Stanley E. Flegm, Crawford County Prosecuting Attorney, and Clifford J. Murphy, Assistant Prosecuting Attorney, for respondents.

_____