[Cite as *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 2015-Ohio-87.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO EX REL. BARBARA HOLWADEL | : | CASE NO. C-130717 |
| and | : | *O P I N I O N.* |
| STATE OF OHIO EX REL. STEVEN W. JOHNSON, | : | |
| Relators, | : | |
| vs. | : | |
| HAMILTON COUNTY BOARD OF ELECTIONS, | : | |
| TIMOTHY M. BURKE, | : | |
| CALEB A. FAUX, | : | |
| CHARLES H. GERHARDT III, | : | |
| ALEX M. TRIANTAFILOU, | : | |
| and | : | |
| RANDY ALLEN SIMES, | : | |
| Respondents. | : | |

Original Action in Mandamus

Judgment of Court:  Writ Denied

Date of Judgment Entry on Appeal:  January 14, 2015

*The Law Firm of Curt C. Hartman* and *Curt C. Hartman,* for Relators,

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *David Stevenson,* Assistant Prosecuting Attorney, for Respondents Hamilton County Board of Elections, Timothy M. Burke, Caleb A. Faux, Charles H. Gerhardt III, and Alex M. Triantafilou,

*Daniel J. Mooney, Jr.*, for Respondent Randy Simes.


**Please note:  this case has been removed from the accelerated calendar.**

**HILDEBRANDT**, **Presiding Judge**.

{¶1}   In this original action, relators Barbara Holwadel and Steven W. Johnson have petitioned for a writ of mandamus to compel the respondents—the Hamilton County Board of Elections ("BOE") and its individual members—to remove respondent Randy Simes's name from the voter registration rolls and cancel his registration forms.  Because we conclude that the BOE did not abuse its discretion in determining that Simes had established a "fixed habitation" in Cincinnati and had met the other statutory requirements to be a valid elector in Hamilton County, Ohio, we deny the writ.

{¶2}   In September 2013, Mary Siegel, a qualified elector of Hamilton County, Ohio, filed a challenge under R.C. 3503.24 to Simes's right to vote. Following a hearing, the BOE rejected the challenge.

{¶3}   A board of elections decision is not subject to an administrative appeal because the board is not a political subdivision for purposes of R.C. Chapter 2506. *State ex rel. Brown v. Summit Cty. Bd. of Elections*, 46 Ohio St.3d 166, 545 N.E.2d 1256 (1989).  Therefore, Siegel could not appeal the BOE's decision.

{¶4}   But " 'mandamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body.' " *State ex rel. 506 Phelps Holdings, LLC v. Cincinnati Union Bethel*, 2013-Ohio-388, 986 N.E.2d 1037, ¶ 31 and 40 (1st Dist.), quoting *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 14. "In an extraordinary action challenging the decision of a board of elections, the standard is whether the board engaged in fraud, corruption, or abuse of discretion or

acted in clear disregard of applicable legal provisions." *State ex rel. Monroe v. Mahoning Cty. Bd. of Elections*, 137 Ohio St.3d 62, 2013-Ohio-4490, 997 N.E.2d 524, ¶ 21, citing *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11.

{¶5} Siegel did not seek relief in mandamus. But the relators did. They filed with this court a petition for a writ of mandamus directing the board "to comply with their legal duties to ensure that only those who meet the statutory requirements to be electors are included on the voter rolls in Hamilton County and, specifically, to strike from the voter rolls the registration of Randy Allen Simes as he fails to meet and satisfy the residency requirements of R.C. 3503.01 and R.C. 3503.02."

{¶6} The parties have filed cross-motions for judgment and have agreed that the record will consist of the factual allegations in the amended complaint to which the respondents have admitted, the transcript and exhibits from Simes's hearing before the BOE, and Simes's notarized affidavit that was filed with this court on February 13, 2014. While the parties agreed that these items make up the record, they each reserved the right to challenge the relevancy or propriety thereof.

{¶7} The record showed that Simes was first registered to vote in Hamilton County, Ohio, in 2004, listing his parents' address as his residence. He was an active voter in Ohio from that date through 2008. Simes moved to Chicago in the beginning of 2012 and registered to vote there in May 2012, listing his residence as the address of his leased apartment. He voted in the November 2012 election in Chicago, but did not vote there in 2013. Simes's employer in Chicago was Parsons Brinckerhoff, which also has offices in Cincinnati. On July 12, 2013, Simes registered to vote in Hamilton County, Ohio, and listed his residence as 1343 Main Street, Unit

9, Cincinnati, Ohio 45202, which was a condominium owned by his friend and business associate, Travis Estell.

{¶8} Estell and Simes have been friends for several years, and they are business associates in the Cincinnati website UrbanCincy. When Simes was in Cincinnati, he would stay with Estell at his two-bedroom condominium. Simes did not pay rent, but he had his own key and could come and go as he pleased. Simes was aware in the spring of 2013, that there was a possibility that his employer would place him on assignment in Korea. Estell testified that this became definite in June, and subsequently, Simes commuted between Cincinnati and Chicago, until he moved to Korea in September 2013, for his two-year assignment. Estell testified that Simes made efforts to establish his residency in Ohio by attempting to obtain an Ohio driver's license during the summer of 2013 and by changing all of his bank and credit card accounts, magazine subscriptions and other mail to the 1343 Main Street address. Estell also testified that Simes had terminated his lease in Chicago and intended to return to Cincinnati, rather than Chicago, once his assignment in Korea ended. Estell said that he had not yet had a specific conversation with Simes about his return to live at 1343 Main Street after his assignment in Korea, but that he was welcome to do so if he chose.

{¶9} In her challenge to Simes's right to vote in Ohio, Siegel testified that she had been to 1343 Main Street, and that Simes's name was not listed on the directory of residents next to the intercom system. She submitted several screenshots of various social media websites with the purpose of demonstrating that Simes was living in Chicago after his re-registration to vote in Ohio, and thus his

time in Cincinnati was transient, and that he had not lived in Ohio for 30 days prior to the first election that he voted in after re-registering, on September 10, 2013.

{¶10} In Simes's written declaration, which the BOE considered during the hearing, he sets forth his numerous connections to Cincinnati. Simes also attached to the declaration his employment agreement, which indicated that when he was "demobilized," his employer would pay to transport Simes and his personal property back to Cincinnati, Ohio.

{¶11} To be entitled to a writ of mandamus, a relator must establish (1) a clear legal right to the relief sought (2) a clear legal duty on the part of the respondent to perform the requested act and (3) the lack of an adequate remedy in the ordinary course of law. *State ex rel. Scott v. Franklin Cty. Bd. of Elections*, 139 Ohio St.3d 171, 2014-Ohio-1685, 10 N.E.3d 697, ¶ 14. These requirements must be proved by clear and convincing evidence. *Id.*

{¶12} Before considering whether the relators are entitled to a writ of mandamus, we first address the contention raised by the BOE and Simes that the relators do not have standing to bring this action. "As a general principle, resident electors and taxpayers * * * have standing to bring mandamus actions to enforce public duties in election matters." *State ex rel. Barth v. Hamilton Cty. Bd. Of Elections*, 65 Ohio St.3d 219, 221-222, 602 N.E.2d 1130 (1992). The relators are qualified Hamilton County electors. So, despite not participating in the proceedings before the BOE, they must be said to have the standing to enforce the "public duty" imposed on the board by R.C. 3503.24, to "determine" a "challenge of the right to vote," *see* R.C. 3503.24(B), and to "remove from the [registration] list" "any person"

whom "the board decides * * * is not entitled to have [his] name on the registration list." *See* R.C. 3503.24(C).

{¶13} The BOE contends that the relators do not have standing to seek an extraordinary writ, because they did not first avail themselves of the statutory procedure set forth in R.C. 3504.24 to challenge a person's right to vote. But we see this argument as one relating to whether the relators had an adequate remedy in the ordinary course of law, not whether the relators had standing to bring this action. And, we hold that under the facts in this case the relators did not have an adequate remedy at law.

{¶14} While mandamus relief will be denied if the relators have not exhausted all administrative remedies, "a person need not pursue administrative remedies if such an act would be futile." *State ex rel. Cotterman v. St. Mary's Foundry*, 46 Ohio St.3d 42, 44, 544 N.E.2d 887 (1989). "The failure to exhaust administrative remedies may be a defense only if there is an effective remedy to afford the relief sought." *Id.* Here, an R.C. 3503.24 application by the relators essentially asking the board to revisit its decision denying Siegel's challenge would not be likely to succeed, as the facts had remained unchanged and thus, cannot be said to constitute an effective means for affording relators the relief sought.

{¶15} We now consider whether the BOE abused its discretion and disregarded clear applicable law in determining that Simes had established a voting residence at 1343 Main Street, based on the evidence presented at the hearing before the BOE.

{¶16} R.C. 3503.01(A) sets forth the requirements for a valid elector, one of which is that the person must be a resident of the county and precinct in which the

citizen offers to vote. In order to be a resident of the county, the person must have a voting residence. There are several ways to establish a voting residence. *See* R.C. 3503.02(A)-(I). R.C. 3503.02(A) provides that a "place shall be considered the [voting] residence of a person in which the person's habitation is fixed and to which, whenever the person is absent, the person has the intention of returning." Courts are to liberally construe election laws in favor of the right to vote. *See State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 62.

{¶17} There was conflicting evidence presented before the BOE as to whether 1343 Main Street was Simes's fixed habitation and whether he had the intent to return to that address in Hamilton County. Evidence was presented in support of Simes that (1) he had previously been registered to vote in Hamilton County and had ties to Cincinnati (2) after he learned in the spring of 2013 that his employer was placing him on assignment out of the country, he had made significant efforts to establish Ohio residency by, among other things, changing the address on all of his bank and credit-card accounts to the 1343 Main Street address (3) he had had unhindered access to 1343 Main Street during the summer of 2013 and afterwards; and (4) he had terminated his lease in Chicago and intended to return to Cincinnati after his assignment in Korea had ended. On the other hand, there was evidence that Simes had spent a significant amount of time in Chicago after re-registering to vote in Hamilton County and had maintained an apartment there until he left for Korea in September 2013. But based on this record, and construing the election laws in favor of the right to vote, we cannot say that the BOE abused its discretion and disregarded clear applicable laws in determining that Simes had established his residence in Hamilton County. Further, when there is conflicting evidence on an issue, the court

may not substitute its judgment for that of the board. *State ex. Rel. Wolfe v. Delaware Cty. Bd. of Elections*, 88 Ohio St.3d 182, 185, 2000-Ohio-294, 724 N.E.2d 771; *State ex rel. Ross v. Crawford Cty. Bd. of Elections*, 125 Ohio St.3d 438, 446, 2010-Ohio-2167, 928 N.E.2d 1082. This principle has been applied to deny writs challenging decisions of boards of elections on residence issues. *Ross* at ¶ 41.

{¶18} The relators maintain that the BOE in reaching its decision, abused its discretion by considering Simes's unsworn written declaration. But the declaration was made under penalty of election falsification. And even if it was improper to consider the written declaration, it did not cause prejudicial harm. Estell's testimony provided enough evidence to support the BOE's determination that 1343 Main Street was Simes's voting residence when he re-registered in Hamilton County.

{¶19} Accordingly, because the relators have not demonstrated by clear and convincing evidence that the BOE had a clear legal duty to strike Simes's name from the voter registration rolls, we deny the writ.

Writ denied.

DEWINE, J., concurs.
FISCHER, J., dissents

FISCHER, J., dissenting.

{¶20} I respectfully dissent.


Please note:
The court has recorded its own entry on the date of the release of this opinion.