[Cite as *Nosse v. Kirtland*, 2022-Ohio-4161.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| LANCE NOSSE,<br><br>Appellant,<br><br>- vs -<br><br>CITY OF KIRTLAND, et al.,<br><br>Appellees. | CASE NO. 2022-L-032<br><br>Administrative Appeal from the<br>Court of Common Pleas<br><br>Trial Court No. 2021 CV 001063 |

**O P I N I O N**

Decided: November 21, 2022
Judgment: Affirmed

*Frank Consolo*, Consolo Law Firm Co., LPA, 627 West St. Clair Avenue, Cleveland, OH 44113 (For Appellant).

*Sean T. Needham* and *Jack Maib*, Reminger Co., LPA, 101 West Prospect Avenue, Suite 1400, Cleveland, OH 44115 (For Appellees).

MATT LYNCH, J.

{¶1} Appellant, Lance Nosse, appeals from the judgment of the Lake County Court of Common Pleas, affirming the decision of appellee, the Kirtland City Council, removing Nosse from his position of Chief of Police for the City of Kirtland. For the following reasons, we affirm the decision of the lower court.

{¶2} On July 7, 2021, the Mayor of Kirtland, Kevin Potter, sent a letter to Nosse, indicating that he had officially submitted Nosse's termination to the City Council for approval. The letter stated that it was "necessary to proceed with removal proceedings pursuant to Ohio Revised Code 733.35, * * * Kirtland's Charter, and Kirtland Codified

Ordinance 244.01(d)" and that Nosse should be terminated for cause "subject to the concurrence of two-thirds of the members of Council." It further stated that pursuant to R.C. 733.35, Nosse was "guilty in the performance of [his] official duty of misfeasance, malfeasance, nonfeasance, misconduct in office, gross neglect of duty, and/or habitual drunkenness." Charges alleged in the letter included violation of the police department's vehicle use policy for driving after consuming alcohol and with an open container; conduct unbecoming of an officer for driving after drinking and use of profane language, sexual comments, and racial comments; lying regarding use of his cell phone; neglect of duty for having long absences during work hours; use of alcohol off duty discrediting himself and the department; misuse of the city cell phone; damage to his city vehicle; and mocking and belittling subordinates.

{¶3} Nosse's counsel sent a letter requesting that the hearing before the City Council be conducted in public pursuant to R.C. 121.22(G)(1). A hearing on Nosse's termination was held on August 2 and 3, 2021.

{¶4} Teresa Szary, Assistant to the Mayor, testified that in March 2021, she discovered that a government issued phone used by Nosse had gone significantly over the text message limit, resulting in a fee of approximately $80. Nosse denied being aware of the limit on the messages. Szary testified that most of the text messages were to a city councilwoman.

{¶5} Amy Buchanan, a police records clerk, testified that during March and April 2021, she noticed that Nosse was in the office less than normal, had been raising his voice at employees, and had arguments with the dispatcher. She complained that Nosse was not present to complete necessary paperwork. She heard Nosse use the "n word"

2

at the police station "frequently" and saw him give people the finger in "a hey how are you doing fashion." She overheard comments about sexual acts a female officer performed with another woman. She also was aware that Nosse had made a comment about a Mexican officer who was seeking a transfer, asking another officer if he was "going to take my [Nosse's] Mexican."

{¶6} Cynthia Gabor, Nosse's administrative assistant, stated that she heard him use foul language in the department and requested that he stop. She also observed him in his city-issued vehicle with a bottle or can of beer.

{¶7} Sergeant Eric LaTurner described an incident in early 2021 during which he picked up Chief Nosse at a councilwoman's house pursuant to Nosse's request and brought him to the station. At that time, Nosse appeared intoxicated and LaTurner observed Nosse drinking in his office. Nosse then left the department in his city-issued vehicle. LaTurner also explained that he had made a complaint to the police union with other officers in February relating to Nosse's drinking impacting his work, with LaTurner observing him being absent from the office.

{¶8} Sergeant Jamey Fisher also testified that he had concerns that the chief was not always present in the office or responsive to communications. Nosse told Fisher he had been leaving work during the day to meet a councilwoman, with whom it was alleged he was having an affair, in parking lots. In April 2021, Nosse came to Fisher's house and invited the councilwoman over as well. Nosse was drinking while in the home and his behavior made Fisher uncomfortable. He asked the two to leave and they remained in his driveway for several hours, Nosse urinated in his yard, and they each drove away in their own vehicles after midnight. He opined that Nosse driving his vehicle

3

after drinking violated the City of Kirtland's vehicle use policy. The policy, which Nosse had reviewed and signed as a condition of employment in February 2020, provides that improper or unsafe use of city vehicles will not be tolerated and can result in termination of employment. It further provides that an employee shall not operate a city vehicle with a blood alcohol concentration of higher than .08. It also states that "[i]t will be conclusively presumed that the employee is under the influence of such alcohol * * * if such alcohol * * * is used within six hours prior to engaging in such activities." An inventory of Nosse's vehicle was subsequently performed and an alcohol bottle cap was discovered inside.

{¶9} Mayor Kevin Potter testified that in January 2021, Nosse requested a raise. They had a meeting where Potter inquired whether Nosse had been at a resident's house late in the evening consuming excessive amounts of alcohol. Nosse admitted drinking but said he was not in his city vehicle. Potter decided not to give him the raise due to these concerns. Subsequently, after the incident at Sergeant Fisher's house, Nosse informed Potter that he had problems at home and needed some time to handle them. Fire Chief Hutton, who had been advised by Fisher of his concerns, informed Potter of these issues, including the affair with the councilwoman, use of racial epithets in the police department, and a potential "hostile work environment." Potter spoke to Nosse and told him he must take personal medical leave or be put on unpaid leave. On April 16, 2021, Potter sent an e-mail to Nosse which noted they had a conversation and he agreed to take a leave of absence. Pursuant to evidence presented at the hearing, Nosse was granted leave under the Family Medical Leave Act on April 20, 2021. After seeing the video of the incident at Fisher's house, Potter decided an investigation of Nosse's conduct was required, which led to his subsequent decision to raise charges against Nosse.

4

{¶10} Nosse admitted that he was an alcoholic but had sought treatment beginning April 16, 2021, to address this concern. He had told Szary he would pay for the cell phone bill overage, although he had been unaware of the limits of its use. He did not admit or deny using the "n word" or the "f word." He admitted that officers would sometimes drink in the police department to celebrate special occasions.

{¶11} Nosse explained that he went to Fisher's house while off duty. He believed that he was permitted to use his vehicle as he saw fit. Nosse explained that he often had responsibilities outside of the office which led to him leaving during the day.

{¶12} Following closing arguments, the Council moved, over objection of Nosse, to enter into executive session to deliberate and review evidence. On August 3, 2021, the Council decided, by a vote of 6-1, to terminate Nosse from his position.

{¶13} Nosse filed an appeal from the decision of the Council in the Lake County Court of Common Pleas. On March 31, 2022, the court issued an Opinion and Judgment Entry affirming Nosse's removal from his position. The court found no error in the Council moving to executive session to evaluate evidence presented at a public hearing. The court outlined evidence presented relating to Nosse's conduct both while on and off duty and determined that there was no abuse of discretion by the Council "in their determination that Nosse's professional and personal behavior constituted unbecoming conduct in violation of the City of Kirtland Police Department Rules and Regulations."

{¶14} On appeal, Nosse raises the following assignments of error:

{¶15} "[1.] The common pleas court erred in its interpretation and application of R.C. 121.22(G)(1) by deciding that the Appellee Kirtland City Council had the right to deliberate in executive session at the conclusion of the evidentiary hearing held pursuant

to R.C. 733.36 to consider the Mayor's termination of employment of Police Chief Nosse, despite Police Chief Nosse demanding that the hearing be conducted in public, and not in executive session, thereby validating Council's concurrence with the Mayor's decision to terminate the employment of Police Chief Nosse.

{¶16} "[2.] The common pleas court erred in its application and interpretation of R.C. 124.34 and Kirtland Cod. Ord. Sect. 244.01(d) by deciding that Police Chief Nosse could be removed from office for violations of the Kirtland Police Department Rules and Regulations.

{¶17} "[3.] The common pleas court erred in its application and interpretation of R.C. 733.35 by deciding that engaging in certain unbecoming conduct, on and off of duty, in violation of the Kirtland Police Department Rules and Regulations is sufficient evidence to support the Mayor's charges pursuant to R.C. 733.35 that Police Chief Nosse, in the performance of his official duty, engaged in acts of misfeasance, nonfeasance, misconduct in office, gross neglect of duty, and/or habitual drunkenness, such that he may be removed from office pursuant to R.C. 733.35."

{¶18} Nosse brought the present appeal pursuant to R.C. Chapter 2506, which provides for appeals to the court of common pleas from orders or decisions of divisions of a political subdivision. R.C. 2506.01(A). In such appeals, the common pleas court considers whether the administrative decision "is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. "Thereafter, an appellate court's review of the judgment of the trial court is more limited than that of the court of common pleas." *E. Main St. Lofts v. City of Kent Planning Comm.*, 11th Dist. Portage No.

6

2019-P-0069, 2019-Ohio-5312, ¶ 5. "This court's review is whether, as a matter of law, the decision of the court of common pleas is supported by a preponderance of reliable, probative, and substantial evidence." *Jones v. Hubbard Twp. Bd. of Zoning Appeals*, 11th Dist. Trumbull No. 2014-T-0041, 2015-Ohio-2300, ¶ 7; *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984).

{¶19} R.C. 2506.04 "grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. Within the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court." *Kisil* at 34, fn. 4; *Shelly Materials, Inc. v. Streetsboro Planning and Zoning Comm.*, 158 Ohio St.3d 476, 2019-Ohio-4499, 145 N.E.3d 246, ¶ 17 ("[a]part from deciding purely legal issues, the court of appeals can determine whether the court of common pleas abused its discretion * * * in deciding that an administrative order was or was not supported by reliable, probative, and substantial evidence").

{¶20} In his first assignment of error, Nosse argues that Kirtland City Council was not permitted to deliberate his termination in executive session. In support, he cites to *Conner v. Village of Lakemore*, 48 Ohio App.3d 52, 547 N.E.2d 1230 (9th Dist.1988), and an accompanying line of cases, for the proposition that R.C. 121.22 prohibits holding an executive session to consider dismissal of a police chief. The Council argues that *Conner* is inapplicable and this court should consider more recent authorities which clarify principles relating to open meetings, emphasizing that quasi-judicial proceedings do not prohibit retiring to executive session prior to termination of an employee.

7

{¶21} Pursuant to R.C. 121.22(A): "This section shall be liberally construed to require public officials take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law." R.C. 121.22(G)(1) provides that "the members of a public body may hold an executive session * * * at a regular or special meeting for the sole purpose of the consideration of any of the following matters: * * * [t]o consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee, official, licensee, or regulated individual, unless the public employee, official, licensee, or regulated individual requests a public hearing." "A * * * formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for a purpose specifically authorized in division (G) or (J) * * * and conducted at an executive session held in compliance with this section." R.C. 121.22(H).

{¶22} In *Conner*, a police chief was dismissed from his position by the mayor. The chief requested a public hearing before the city council in the appeal of his dismissal. *Conner* at 53. Evidence was heard at a public hearing and the council then called an executive session to review the evidence and determine whether to uphold the dismissal. It returned to the public hearing and took a formal vote to uphold the mayor's action. *Id.* at 53-54. The appellate court held that, "R.C. 737.19 [setting forth procedures for removal of an officer in a village] authorizes a hearing, and dictates that it should be held at a regularly scheduled meeting of the village legislative authority. Where a hearing is statutorily authorized, and a public hearing is requested, R.C. 121.22(G) precludes the holding of an executive session to consider the dismissal of a public employee or official."

8

*Id.* at 54. It found that the council's actions were invalid and vacated the court's judgment. *Id.* Nosse correctly observes that this case is factually similar to the present matter.

{¶23} *Conner* has been cited in support of the proposition that "[o]nly when a hearing is statutorily authorized, and a public hearing is requested, does R.C. 121.22(G) operate as a bar to holding an executive session to consider the dismissal of a public employee." *Schmidt v. Village of Newtown*, 1st Dist. Hamilton No. C-110470, 2012-Ohio-890, ¶ 26; *Stewart v. Bd. of Edn. of Lockland School Dist.*, 1st Dist. Hamilton No. C-130263, 2013-Ohio-5513, ¶ 14. The Ohio Supreme Court affirmed the opinion in *Stewart*, holding that "[a] public employee can require that a hearing about his employment status be held in public under R.C. 121.22(G)(1) only when the employee is otherwise entitled to a public hearing." *Stewart v. Lockland School Dist. Bd. of Edn.*, 144 Ohio St.3d 292, 2015-Ohio-3839, 42 N.E.3d 730, ¶ 15. *See also Matheny v. Frontier Local Bd. of Edn.*, 62 Ohio St.2d 362, 366, 405 N.E.2d 1041 (1980) ("Under [R.C. 121.22(G)(1)], a public body may meet in executive session to consider the employment of a public employee, unless the public employee 'requests a public hearing.' In that event, an open session must be held."). While these cases recognize when a public hearing is not required, they do not examine this issue in the same manner as *Conner* since they do not involve a party entitled to such hearing.

{¶24} A similar issue to that raised in *Conner* was addressed in *Gross v. Village of Minerva Park Village Council*, S.D.Ohio No. 2:12-cv-00012, 2012 WL 4009604 (Sept. 12, 2012). In that matter, a police officer who appealed his termination by the mayor to the city council requested a public hearing relating to his removal, evidence was presented at that hearing, and the council convened an executive session to deliberate

9

removal. The *Gross* opinion addressed the alleged error in failing to comply with R.C. 121.22(G)(1). It observed the lack of on point Ohio Supreme Court authority on this issue and, in rejecting *Conner*, pointed to Supreme Court cases offering "considerable guidance in substantially similar frameworks," citing to *TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision*, 81 Ohio St.3d 58, 689 N.E.2d 32 (1998), and *State ex rel. Ross v. Crawford Cty. Bd. of Elections*, 125 Ohio St.3d 438, 2010-Ohio-2167, 928 N.E.2d 1082. *Id.* at *5.

**{¶25}** In *TBC Westlake*, the Ohio Supreme Court was faced with an appeal relating to the valuation of property for taxation purposes. It addressed the applicability of R.C. 121.22 and public meetings requirements to such proceedings. It observed that an adjudication of the Board of Tax Appeals is a quasi-judicial proceeding and although hearings are open to the public, "like all judicial bodies, [it] requires privacy to deliberate, *i.e.*, to evaluate and resolve, the disputes." *Id.* at 62. It determined that "the Sunshine Law does not apply to adjudications of disputes in quasi-judicial proceedings." *Id.* A quasi-judicial proceeding has been described as "one 'in which notice, a hearing, and the opportunity for the introduction of evidence have been given.'" *Downie v. Lake Metro. Hous. Auth.*, 11th Dist. Lake No. 2014-L-060, 2015-Ohio-811, ¶ 14, citing *AT&T Communications of Ohio, Inc. v. Lynch,* 132 Ohio St.3d 92, 2012-Ohio-1975, 969 N.E.2d 1166, ¶ 8.

**{¶26}** In reaching this conclusion, the Supreme Court cited *Angerman v. State Med. Bd. of Ohio*, 70 Ohio App.3d 346, 591 N.E.2d 3 (10th Dist.1990), wherein the state medical board decided to revoke appellant's medical license and did not conduct its deliberations in a meeting open to the public. The court found that "[a]lthough R.C. 121.22 makes no general exception for judicial or quasi-judicial deliberations, * * * it

10

Case No. 2022-L-032

necessarily follows that such deliberations are not intended to be within the purview of the open-meeting requirement of R.C. 121.22." *Id.* at 351. The court determined that the reference to a public hearing contained in R.C. 121.22(G)(1) related to the "hearing itself and not to deliberations of the adjudicatory body after the hearing is completed" and that such deliberations need not be open to the licensee or the public. *Id.* at 352.

{¶27} In *Ross*, the Ohio Supreme Court, considering a board of elections hearing on an individual's right to vote, again emphasized that "a quasi-judicial hearing is not a meeting for purposes of this [R.C. 121.22] definition, and hence is not subject to the open meeting requirements." (Citation omitted.) 125 Ohio St.3d 438, 2010-Ohio-2167, 928 N.E.2d 1082, at ¶ 25.

{¶28} Based on this authority, the *Gross* opinion concluded that the same rationale should apply to the circumstances similar to those here. In both *Gross* and the present matter, the plaintiff requested a public hearing on removal, the hearing was held, the plaintiff was permitted to present evidence and argument in his defense while represented by counsel, and the city council ultimately deliberated in executive session. We agree with the conclusion reached in *Gross*, with the support of the authority in other quasi-judicial proceedings, that the decision to hold deliberations and review evidence in executive session does not provide a claim for relief under the Open Meetings Act. *Gross,* 2012 WL 4009604, at *7.

{¶29} The first assignment of error is without merit.

{¶30} In his second assignment of error, Nosse argues that the court erred in determining the Rules and Regulations of the Department supported removal because he was not part of the civil service and "to the extent that the * * * decision can be read

11

as deciding that Police Chief Nosse was removed * * * for just cause pursuant to Cod. Ord. Sec. 244.01(d), that ordinance" cannot be enforced because it conflicts with the City Charter and R.C. 733.35.

{¶31} Section 10.73 of the Kirtland Police Department Rules and Regulations states that members of the department "shall hold their positions during good behavior and efficient service but may be removed for the following reasons, as listed in the Ohio Revised Code, Section 124.34: 'Incompetence, Inefficiency, Dishonesty, Drunkenness, Immoral Conduct, Insubordination, Discourteous Treatment of the Public, Neglect of Duty, Violation of the Civil Service Laws or the Rules of the Civil Service Commission, or any other failure of good behavior, or any other acts of Misfeasance, Malfeasance, or Nonfeasance in Office.'" R.C. 124.34(A) provides that the tenure of "every officer or employee in the classified service of the state and the counties, civil service townships, [and] cities * * * shall be during good behavior" but they may be removed or suspended for those behaviors listed above.

{¶32} Regardless of whether R.C. 124.34 applied to Nosse, an issue he admits he did not raise below, we do not find this impacts the present matter. The lower court did not state that it relied on this statute in order to justify his termination, nor did the Council do so. The fact that the court discussed the police department rules does not mean that it relied on this statute, as it emphasized misfeasance, malfeasance, misconduct in office, and neglect of duty, all of which are proper grounds for termination under R.C. 733.35, the statute under which Nosse argues this matter properly proceeded. Charges can be filed, and a termination hearing before the city council pursued, when the "officer has been guilty, in the performance of his official duty, of bribery, misfeasance,

12

malfeasance, nonfeasance, misconduct in office, gross neglect of duty, gross immorality, or habitual drunkenness." R.C. 733.35. To the extent that the lower court considered the Kirtland Police Department Rules and Regulations, as we will discuss below, consideration of the violation of these regulations is not improper in supporting a decision that he was properly terminated as the rules tend to show whether his acts rose to the level of fireable misconduct.

{¶33} Nosse also argues that Kirtland Codified Ordinance 244.01 conflicts with R.C. 733.35 and could not be applied here.

{¶34} K.C.O. 244.01(d) provides: "The Mayor may remove the Chief from office for just cause; provided, however, that such removal shall not take effect without the concurrence of two-thirds of the members of Council." We do not find that this conflicts with R.C. 733.35 and .36, which allow for removal for various reasons requiring cause, including "bribery, misfeasance, malfeasance, nonfeasance, misconduct in office, gross neglect of duty, gross immorality, or habitual drunkenness" and provide for the hearing of the filing of charges by the mayor and removal by two-thirds of the Council. Further, even accepting that R.C. 733.35 was the correct standard for terminating Nosse, the court did not state it relied on K.C.O. 244.01 in finding it was proper to uphold the Council's decision and it is evident these proceedings were instituted based on violations of R.C. 733.35, which the Mayor stated in his termination letter. There was no violation of the Charter as it requires compliance with the Revised Code, as noted by Nosse. Further, as will be addressed below, the court did not err in affirming the Council's decision as it was consistent with R.C. 733.35.

{¶35} The second assignment of error is without merit.

13

Case No. 2022-L-032

{¶36} In his third assignment of error, Nosse argues that the lower court could only consider conduct that was committed as part of his official duty to justify his removal pursuant to R.C. 733.35 and the court's findings were related to rule violations rather than conduct committed in the scope of his duty as police chief. A review of the record does not reveal an abuse of discretion in the court's determination that his dismissal was supported by reliable, probative, and substantial evidence.

{¶37} As described above, R.C. 733.35 provides for the mayor to bring charges against the police chief to the city council for several reasons, including, inter alia, "in the performance of his official duty, * * * misfeasance, malfeasance, * * * misconduct in office, gross neglect of duty, gross immorality, or habitual drunkenness." Here, there was evidence presented at the Council hearing that Nosse committed acts falling under this statute both while on duty as chief as well as while off duty. Witnesses observed that he had used the "n word," i.e., an inappropriate racial term, frequently while working in his capacity within the police department as well as made comments about other officers' sexual conduct. He also was accused of repeatedly being unavailable or not present during normal working hours of the police department.

{¶38} Other acts, such as drinking before driving his city-issued vehicle and displays of "drunkenness" took place while he was not working directly in his capacity as police chief and outside of his typical working hours. At least one court has observed that "the performance of official duty" should be construed broadly and is not limited to specific tasks in one's job duties like providing emergency services, emphasizing inclusion of "bribery" and "gross immorality" as misconduct generally unrelated to the work tasks of a firefighter. *Gasper v. Washington Twp.*, 10th Dist. Franklin No. 02AP-1192, 2003-Ohio-

14

3750, ¶ 20. It also drew an analogy to the use of the term misconduct "in office" used in R.C. 124.34 [relating to termination of classified service employees], which has been applied by various courts finding misconduct that is not job-related provides grounds for termination. *Id.* at ¶ 21, citing *O'Harra v. Columbus City School Dist. Bd. of Edn.*, 10th Dist. Franklin No. 88AP-149, 1989 WL 27163, *2-3 (Mar. 23, 1989) (OVI committed by school truck driver outside of work duties warranted termination); *Perry v. Miamisburg*, 2d Dist. Montgomery No. 14682, 1995 WL 324636, *3 (May 17, 1995) (rape conviction unrelated to work constituted immoral conduct and "[c]onduct of that type by a public employee is detrimental to the confidence which the public must have in government and its employees").

{¶39} Moreover, there is no question that much of the conduct committed by Nosse, whether on or off duty, violated the Rules and Regulations of the Kirtland Police Department which Nosse stated at the hearing were applicable to him. Regardless of whether he could be terminated under the terms of the department rules for his conduct, his violation of the rules is a relevant consideration when determining whether his conduct satisfied the standards set forth in R.C. 733.35 and violated his duties as a police chief.

{¶40} For example, Rule 10.6 provides that "[m]embers of the Police Department shall conduct themselves at all times, both on and off duty, in such a manner so to reflect most favorably on the Department" and Rule 10.20 that "Members of the Police Department while off duty shall refrain from consuming intoxicating beverages to the extent that it results in impairment, obnoxious or offensive behavior which discredits them or the Department." Nosse's activities of drinking in his office, whether on or off duty, do not reflect favorably on the department. The testimony relating to his visit to Fisher's

15

house reflected that he urinated outside and was acting in a manner consistent with intoxication, a fact shown in the videos outside of Fisher's home. The witness testimony also demonstrated that he had carried alcoholic beverages in his work vehicle and stored alcohol in his office. This conduct also violates Rule 10.17: "Members of the Police Department shall not store or bring into any police facility or vehicle alcoholic beverages." While these rules may not all apply to conduct committed while "on duty," it is evident compliance with the rules themselves were part of Nosse's duties as the police chief. For example, in *Fulmer v. W. Licking Joint Fire Dist.*, 5th Dist. Licking No. 16-CA-8, 2016-Ohio-5301, the decision to terminate a fire chief under R.C. 733.35, in part due to a violation of the fire district's technology policy through use of a laptop for inappropriate purposes outside of the workplace, was upheld.

{¶41} Further, certain conduct committed, while not during his typical work hours, can be perceived as done in his official capacity, such as drinking while in his office at the department. This court has observed that where a fire chief was not on duty but appeared at the scene of a fire while under the influence of alcohol in violation of fire department rules, his appearance "is perceived to be in his official capacity" and was relevant in determining whether he should be terminated under R.C. 733.35. *Duvall v. Deerfield Twp. Bd. of Trustees*, 11th Dist. Portage No. 1698, 1987 WL 8463, *3 (Mar. 27, 1987). Nosse's activity blurred the lines between on duty and off duty conduct.

{¶42} Even if the Council and court had not considered conduct committed while "off duty," the use of racially derogatory language, statements about employees' sexual conduct, concerns expressed by employees that he was frequently distracted or not present in the office, and drinking in his office were valid concerns relating to his conduct

16

in his role of police chief that supported the finding made below.

{¶43} The third assignment of error is without merit.

{¶44} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, affirming Nosse's termination as police chief, is affirmed. Costs to be taxed against appellant.

THOMAS J. WRIGHT, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2022-L-032