MATHENY ET AL., APPELLANTS, *v.*
FRONTIER LOCAL BOARD OF EDUCATION, APPELLEE.
UZARSKI, APPELLANT, *v.*
WARREN LOCAL BOARD OF EDUCATION, APPELLEE.

[Cite as Matheny v. Bd. of Edn. (1980), 62 Ohio St. 2d 362.]

(Nos. 79-826 and 79-827—Decided June 18, 1980.)

*Messrs. Oths, Foley & Heiser, Mr. Mark A. Foley, Green, Schiavoni, Murphy, Haines & Sgambati Co., L.P.A.,* and *Mr. Frederick G. Cloppert, Jr.,* for appellants.

*Mr. Donald L. Jones,* prosecuting attorney, and *Mr. James E. Schneider,* for appellees.

*Per Curiam.* In their third proposition of law, appellants contend that a non-tenured teacher in Ohio has an "expectancy" of continued employment, and that the Due Process Clause requires that such a teacher be afforded a hearing prior to divestiture of this property interest. We cannot agree.

The issue of property interest claimed to be held in a public teaching position is a matter of state law. *Board of Regents* v. *Roth* (1972), 408 U.S. 564, 577; *Bishop* v. *Wood* (1976), 426 U.S. 341, 344. We must decide, therefore, whether Ohio law gives non-tenured teachers "a legitimate claim of entitlement to" continued employment. *Roth, supra,* at page 577.

R. C. 3319.11 provides a system for the employment of teachers in this state. When certain conditions are met,[1] a

---

[1] R. C. 3319.11, provides, in reference to the eligibility of a teacher for a continuing contract, as follows:

"Teachers eligible for continuing service status in any school district shall be those teachers qualified as to certification, who within the last five years have taught for at least three years in the district, and those teachers who, having attained continuing contract status elsewhere, have served two years in the district, but the board of education, upon the recommendation of the superintendent of schools, may at the time of employment or at any time within such two-year period, declare any of the latter teachers eligible."

teacher may be awarded a continuing contract. When the conditions are not met, however, the teacher is employed under a limited contract, and is granted no specific right to continued employment.

In *Depas* v. *Board of Edn.* (1977), 52 Ohio St. 2d 193, this court was confronted with the issue of whether a school principal, employed under a limited contract, had an expectancy of continued employment where the school board was required to consider certain criteria in determining reappointment. We held that he did not. R. C. 3319.11 does not require a school board to set forth its reasons for refusing to renew a limited contract. We believe these causes presently under review present a less forceful claim of entitlement than that rejected by this court in *Depas*, in that here there is no claim that the board must consider any specific criteria for reappointment.

Appellants more specifically contend that R. C. 3319.07 gives rise to an expectancy of continued employment for non-tenured teachers. R. C. 3319.07 provides, in part, that:

"In making appointments teachers in the employ of the board shall be considered before new teachers are chosen in their stead."

Appellants maintain that this statute states a "preference" for retention of current employees, and thus gives rise to a constitutionally protected property interest. Even if this provision of R. C. 3319.07 were read so broadly as to grant a preference to non-tenured teachers, it is apparent that it refers to the situation where a vacancy occurs and a currently employed teacher may be transferred to fill it. R. C. 3319.07 is simply inapplicable to the facts at bar.

We hold that under the provisions of R. C. Chapter 3319, a non-tenured teacher has no expectancy of continued employment past the term of his limited contract. Therefore, there is no property right involved here as claimed by appellants. In the absence of such a constitutionally protected interest, due process does not require a hearing by the board on the issue of non-renewal of such contract.

In their first proposition of law, appellants assert that appellees have violated R. C. 121.22, commonly known as the "Sunshine Law," by failing to give them prior notice of discussions pertaining to their employment status, and by failing to

hold those discussions in sessions open to the public. They further contend that any board action resulting from these violations is invalid.

The 1975 amendment to R. C. 121.22 was intended to expand public access to the operation of state and local governmental entities. The major thrust of this amendment was to require that not only formal actions of public bodies, but also the deliberations preceding those actions, take place in sessions open to the public.[2] To this end, R. C. 121.22(A) now provides that:

"This section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings, unless the subject matter is specifically excepted by law."

R. C. 121.22(C) similarly proclaims that:

"All meetings of any public body are declared to be public meetings open to the public at all times.

"The minutes of a regular or special meeting of any such public body shall be promptly recorded and open to public inspection. The minutes need only reflect the general subject matter of discussions in executive sessions authorized under division (G) of this section."

Under the definition set forth in R. C. 121.22(B)(1), a local school board is a public body, as that term is used in R. C. 121.22(C), and its deliberations and official actions are required to take place in open session. R. C. 121.22(G), however, provides that:

"The members of a public body may hold an executive session only at a regular or special meeting for the sole purpose of the consideration of any of the following matters:

"(1) Unless the public employee, official, licensee, or regulated individual requests a public hearing, to consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee***."

R. C. 121.22(G)(1) thus creates an exception to the open meeting requirement of division (C) of that section, and

---

[2] Prior to the 1975 amendment, R. C. 121.22, as construed in *Dayton Newspapers* v. *Dayton* (1971), 28 Ohio App. 2d 95, required only that formal actions of governmental bodies take place in sessions open to the public. The deliberative process was permitted to take place in executive session.

authorizes a public body to meet in executive session to consider matters relating to the employment of a public employee. This section, however, also carves an exception to the above exception. Under its terms, a public body may meet in executive session to consider the employment of a public employee, *unless* the public employee "requests a public hearing." In that event, an open session must be held.

Appellants contend that R. C. 121.22(G)(1) grants some form of public hearing to a non-tenured teacher whose limited contract is about to expire, when so requested by the teacher. Alternatively, appellants argue that, at a minimum, when sought by the teacher, this section requires that all discussions pertaining to renewal of a limited teaching contract must take place in open session. These arguments are not well taken.

As we pointed out earlier, the specific provisions of R. C. Chapter 3319 dealing with school boards and teachers do not require a school board to set forth reasons supporting its decision not to renew a limited teaching contract. This court has also held, in *Delong* v. *Board of Edn.* (1973), 36 Ohio St. 2d 62, 64, that "[t]here is no requirement***anywhere in R. C. Chapter 3319, that a board of education must provide a teacher, whose limited contract is due to expire, with notice of, or opportunity to be heard at, the meeting where his reemployment is being considered."

It may reasonably be concluded, and we so hold, that, in enacting R. C. 121.22(G)(1), the General Assembly intended to leave undisturbed the provisions of R. C. Chapter 3319 relating to teacher employment. Supportive of this conclusion is the fact that absent an exception to the otherwise broad mandate of R. C. 121.22(C), such section would be in conflict with existing statutes which promulgate procedures applicable to teacher employment actions. For example, R. C. 3319.16 provides that a board of education may not terminate a teacher's employment contract except upon certain specified grounds. That section further provides that a teacher whose contract is terminated has the right to a hearing which *"shall be private unless the teacher requests a public hearing."* (Emphasis added.)

It is evident that R. C. 3319.16 is aimed at protecting the privacy of a teacher against whom charges of misconduct have

been preferred. R. C. 121.22(C), standing alone, would erode this protection by requiring that all termination hearings be public. For this reason, the General Assembly, in R. C. 121.22(G)(1), enacted the following exception to the public meeting requirement which closely parallels the above-quoted language of R. C. 3319.16:

"The members of a public body may hold an executive session***to consider the***dismissal***of a public employee***," "[u]nless the public employee***requests a public hearing***."

We believe that R. C. 121.22(G)(1) was intended to bring the other provisions of that section into conformity with existing statutes, such as R. C. 3319.16, which prescribe the procedure applicable to public employee termination actions. We do not believe that the words "unless the public employee ***requests a public hearing***" were intended to grant the right to a hearing where none existed previously, as in the instance of contract considerations of non-tenured teachers.

Appellants' assertion that R. C. 121.22(G)(1) was intended to give non-tenured teachers a right to demand a public hearing is also belied by actions taken by the General Assembly subsequent to the enactment of R. C. 121.22. In 1977, the 112th General Assembly passed Am. Sub. H. B. No. 449, which would have amended Chapter 3319 and required a hearing prior to the non-renewal of any teaching contract. The bill was vetoed by the Governor on July 21, 1977; the General Assembly did not override the Governor's veto. Had the General Assembly intended to provide the right to a hearing for all teachers by the enactment of R. C. 121.22, it would not have later considered an amendment to R. C. Chapter 3319 to be necessary.

Concluding, we hold that the enactment of R. C. 121.22(G)(1) has not afforded appellants a procedural right to a hearing on the issue of their contract renewal.

We turn now to appellants' contention that R. C. 121.22 (G)(1) grants non-tenured teachers a right to demand that a school board conduct all its deliberations on contract renewals in open session.

As we have noted above, matters relating to public employment are excepted from the open meeting requirement

of R. C. 121.22(C), unless the public employee "requests a public hearing." Appellants ask this court to equate "public hearing" with "meetings open to the public," and hold that a school board may not meet in executive session to discuss the renewal of a limited contract, if the affected teacher demands that the deliberations be conducted in open session. While we are required, pursuant to R. C. 121.22(A), to give this statute a liberal construction, we are not required to disregard the terminology utilized by the General Assembly.

Throughout R. C. 121.22, the legislature employed the term "meeting" to designate "any prearranged discussion of the public business of the public body by a majority of its members." R. C. 121.22(B)(2). Since the General Assembly specifically defined, and extensively employed, the term "meeting" in drafting this statute, and since the term "hearing" appears only twice in the statute, both times in reference to situations where a formal hearing is statutorily mandated, we must assume that these terms were intended to have altogether different meanings. As we have stated, the term "public hearing" in subdivision (G)(1) of this statute refers only to the hearings elsewhere provided by law.

Accordingly, we hold that R. C. 121.22 authorizes a school board to conduct private deliberations upon the renewal of a limited teaching contract. Nothing in this section grants a non-tenured teacher the right to demand that those deliberations be made in public. For this reason, we further hold that R. C. 121.22 does not give rise to a constitutionally protected expectancy of continued employment for non-tenured teachers, as argued in appellants' third proposition of law, *supra*.

In their second proposition of law, appellants contend that appellees violated the provisions of R. C. Chapter 1347, by failing to conduct investigations of appellants' personnel files when requested to do so. They argue further that these violations render void the board resolutions not to renew their teaching contracts.

R. C. 1347.09(A)(1) provides that:

"If any person disputes the accuracy, relevance, timeliness, or completeness of the personal information pertaining to him that is maintained by any state or local agency,

he may request the agency to investigate the current status of the information. The agency shall, within a reasonable time after receiving the request from the disputant, make a reasonable investigation to determine whether the disputed information complies with division (F) of section 1347.05 of the Revised Code and shall notify the disputant of the results of the investigation and of the action that the agency plans to take with respect to the disputed information. The agency shall delete any information that it cannot verify or that it finds to be inaccurate.''

Appellant Uzarski filed a written demand for an investigation of her personnel file on April 22, 1977. Three days later, the Warren board voted not to renew her contract. Appellant Mains requested that she be allowed to inspect her personnel file on April 20, 1977. An appointment for this purpose was scheduled for the following day. This appointment was subsequently cancelled by the district superintendent. Both Matheny and Mains were present at the April 21, 1977, meeting of the Frontier board, and demanded that it conduct investigations of their personnel files. The board disregarded their requests, and voted not to renew their employment contracts.

We assume, without deciding, that the school boards violated the provisions of R. C. 1347.09(A)(1). The remedy for these violations, however, is not the one suggested by appellants. There is no provision in R. C. Chapter 1347 for holding null and void an order made in violation of that chapter. Nor does violation of this chapter divest a public agency of subject matter jurisdiction over areas within its competence, such that a subsequent order of that agency would be void.

The remedies for violation of R. C. 1347.09(A)(1) are set forth in R. C. 1347.10 and 1347.99, and include: civil damages, injunctive relief, and, in some cases, criminal sanctions. Presumably, an action in mandamus would also be appropriate to enforce the provisions of R. C. Chapter 1347. Appellants, however, have not pursued those remedies in these causes, and their second proposition of law is overruled.

In their final proposition of law, appellants argue that the boards' decisions not to renew their limited contracts were ar-

bitrary and capricious. This claim is not supported by the record.

Upon consideration of the foregoing analysis, we affirm the judgment of the Court of Appeals.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

HERBERT, J., concurs in the judgment.