### Davidson
### v.
### Sheffield-Sheffield Lake Board
### of Education
*[Cite as 3 AOA 252]*

*Case No. 89C A004624*
*Lorain County, (9th)*
*Decided May 23, 1990*

*Jeffrey H. Manning, Attorney At Law, 7064 Avon Belden Road, North Ridgeville, Ohio 44039, for Plaintiff.*

*Dennis O'Toole, Robert J. Gargasz, Attorneys at Law, 506 Broadway, Fourth Floor, Lorain, Ohio 44052-0528, for Defendant.*

BAIRD, J.

This cause comes before the court upon the appeal of Sharon Davidson from the judgment entry of the Lorain County Court of Common Pleas granting summary judgment in favor of defendants Sheffield-Sheffield Lake Board of Education and individual board members Gary Young, Paula Young, and Cathleen Catanese, on appellant's claim of wrongful termination of her employment as a secretary to the superintendent of the Sheffield-Sheffield Lake school system.

Appellant and appellee board entered into an employment contract on September 23, 1987, which read in part:

"* * *.

"The said Sharon K. Davidson hereby agrees to be employed as Superintendent's Secretary in the public schools of said district from the date of this contract until she resigns, elects to retire, is retired pursuant to law, or until said contract is terminated or suspended as provided by law, * * *."

On June 28, 1988, the board held an executive session at which the board members discussed the termination of appellant's employ-

ment. Following this executive session, the board held an open meeting at which appellant's employment was formally terminated. Appellant filed suit, claiming breach of contract, denial of due process and civil rights violations pursuant to the Fifth and Fourteenth Amendments to the United States Constitution, and violations of Ohio's "Sunshine Law", R.C. 121.22. Appellant claimed damages in the amount of $10 million.

### ASSIGNMENT OR ERROR I

"The trial court erred in granting summary judgment to defendants since a genuine issue of material fact exists as to whether or not plaintiff/appellant's contract with the Sheffield-Sheffield Lake Board of Education was breached."

Civil service in Ohio is divided into either the classified or the unclassified service. R.C. 124.11. Classified civil servants generally must earn their employment through a merit system based on competitive examination, R.C. 124.23, while unclassified civil servants may be employed at the appointing authority's discretion.

"The fundamental purpose of civil service laws and rules is to establish a merit system, whereby selections for appointments in certain branches of the public service may be made upon the basis of demonstrated relative fitness, without regard to political considerations, and to safeguard appointees against unjust charges of misconduct and inefficiency, and from being unjustly discriminated against for religious or political reasons or affiliations." *Curtis* v. *State ex rel. Morgan* (1923), 108 Ohio St. 292, paragraph four of the syllabus.

As it relates to the issues presented by this appeal, the chief distinguishing characteristics between employees in the classified service and those in the unclassified service is the procedural protection afforded to classified servants from arbitrary removal from their employment. See R.C. 124.34. Generally, classified civil servants have a right to hearing before removal, the employer must show cause for removal, and the employer's actions are subject to further review. *State, ex rel. Proctor* v. *Bd. of Edn.* (1978), 60 Ohio App. 2d 396, 398.

Unclassified civil servants are not afforded such procedural protections, and have no entitlement to continued employment. Unclassified civil servants serves at the discretion of the appointing authority, and may be dismissed from their employment without cause. See *State, ex rel. Trimble* v. *State Bd. of Cosmetology* (1977), 50 Ohio St. 2d 283; *Ohio Assn. P.S.E.* v. *Bd. of Edn.*

(1971), 28 Ohio St. 2d 58; *Eudela* v. *Ohio Dept. of Mental Health & Retardation* (1986), 30 Ohio App. 3d 113; *Huber* v. *Celebrezze* (1984), 14 Ohio App. 3d 299.

Appellant does not dispute the fact that she was an unclassified civil servant as designated by R.C. 124.11(A). However, appellant contends that, by virtue of her "continuing contract", she was effectively taken out of the unclassified service and given rights to continued employment pursuant to the contract and to R.C. 3319.081, which provides for continuing contracts for certain nonteaching employees and establishes procedural safeguards before such contracts may be terminated.

Appellant's reliance on R.C. 3319.081 is misplaced. By its express terms, the statute applies only in "all school districts wherein the provisions of Chapter 124. of the Revised Code do not apply ...". As the parties agree that the Sheffield-Sheffield Lake school district is a *city* school district, and R.C. 124.11 expressly applies to city school districts, it is this statute rather than R.C. 3319.081 that governs appellant's classification and the terms of her employment. *Ohio Assn. P.S.E.* v. *Bd. of Edn., supra*; *Erkkila* v. *Painesville Twp. Bd. of Edn.* (1987), 41 Ohio App. 3d 283; *State ex rel. Proctor* v. *Bd. of Edn., supra*; *State ex rel. Bechstein Bd. of Edn.* (1978), 57 Ohio App. 2d 214.

The contention that the terms of the contract itself, apart from any statutory considerations, gave appellant a right to continued employment is also without merit.

"* * *.

Members of a board of education of a school district are public officers, whose duties are prescribed by law. Their contractual powers are defined by the statutory limitations existing thereon, and they have no power except such as is expressly given, or such as is necessarily implied from the powers that are expressly given.

"* * *." *Schwing* v. *McClure* (1929), 120 Ohio St. 335, paragraph one of the syllabus. The determination of whether employees shall be classified or unclassified is a legislative function, and cannot be circumvented by executive or administrative actions:

"* * * The placing of certain positions in the classified service or in the unclassified service, or employees being protected by the civil service law, is a legislative function, and the Legislature in this case exercised that legislative function by prescribing under what conditions an employee shall be considered as being protected by the civil

service law, or shall not considered as being protected by the civil service law.

"* * *." *State ex rel. Dunn* v. *Fosdick* (1916), 21 N.P.N.S. 187, 191. To allow the board in this case to confer upon an unclassified servant the incident of classified service by contract would be to allow the board to thwart the clear legislative intent that only certain types of employees are to have a right to continued employment, and would effectively obliterate the distinctions between classified and unclassified servants.

The issue presented and the court's analysis in *State ex rel. Bd. of Edn.* v. *Miller* (1956), 102 Ohio App. 85, is particularly relevant here:

"* * *.

"The respondent claims title to the office of clerk of the board of education on the theory that his appointment and acceptance and performance of the duties of office is a contract between him and the board of education, that under the terms of this contract he is entitled to serve the full four-year period for which he was appointed; and that, the appointment being legal and binding on the board of education, the board has no right to breach the contract and terminate his term of office until the full period for which he was appointed expires. On the other hand, the relator, board of education, claims the right to remove him at any time they [sic] desire to do so and appoint his successor.

"In a technical sense, the appointment of the respondent as clerk and his acceptance of the office is a contractual relationship between the parties just as most everyday human relationships are based on contracts. However, in considering legal rights under an appointment to public office, the general authorities seem to hold otherwise on the theory that the power of appointment carries with it, by implication, the power of removal. The general rule is stated in 43 American Jurisprudence, 31, Section 183, as follows:

"'When the terms or tenure of a public officer is not fixed by law, and the removal is not governed by constitutional or statutory provision, the general rule is that the power of removal is incident to the power to appoint. Inasmuch as the tenure had not been declared by law, the office is held during the pleasure of the authority making the appointment, and no formal charges or hearings are required in the absence of some statute on the subject. The foregoing rule applies although the appointing power attempts to fix a definite term. This implied power to remove may not be contracted away so as to bind the appoint-ing authority to retain a minor officer for a definite period.'

"* * *." *Id*. at 86-87.

As the board had no power to enter into such a contract, we find that the "continuing contract" with appellant is void as a matter of law, to the extent that it attempted to grant appellant a right to continued employment as an unclassified civil servant.

Appellant's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

"The trial court erred in granting summary judgment to defendants since a genuine issue of material facts exists as to whether the action of defendant/appellee Sheffield-Sheffield Lake Board of Education violated Ohio's 'Sunshine Law,' Ohio Revised Code section 121.22."

Appellant contends that the board failed to comply with the requirements of R.C. 121.22 by holding discussion over an impermissible matter for an executive session, and in denying her notice and the opportunity to be heard. Ohio's "Sunshine Law", R.C. 121.22, declares in section (C) that "All meetings of any public body are declared to be public meetings open to the public at all times". However, the statute enumerates several exceptions to this general rule. Relevant to the case *sub judice*, the statute provides:

"* * *.

"(G) The members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold such a session and only at a regular or special meeting for the sole purpose of the consideration of any of the following matters:

"(1) To consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee, official, licensee, or regulated individual, unless the public employee, official, licensee, or regulated individual requests a public hearing. * * *.

"(H) A resolution, rule or formal action of any kind is invalid unless adopted in an open meeting of the public body. A resolution, rule, or formal action adopted in an open meeting of the public body. A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for a purpose specifically authorized in division (G) of this section and conducted at an executive session held in compliance with this section.

"* * *."

Executive sessions--meetings closed to the public--are allowed if the sole purpose is to discuss, as here, the termination of a particular employee. Appellant contends, solely on the basis of one paragraph of the appellees' answer to her complaint, that this was not the sole purpose of the meeting:

"* * *.

"Defendants admit that on July 28, 1988, at a special meeting of the defendant, Sheffield-Sheffield Lake Board of Education, the Board held an executive session in accordance with Revised Code Section 121.22. and that the Board members did discuss the termination of plaintiff's employment by reason of the abolishment of her former position as a cost cutting/savings move for the School District.

"* * *."

Appellant argues that the appellees have thus admitted that they convened for the purpose of discussing budget issues *in addition to* termination of her employment, that the executive session was therefore illegal, and that any subsequent action taken as a result of this illegal session is therefore invalid. Appellant cites *Gannett & Satellite Information Network, Inc.* v. *Chillicothe Bd. of Edn.* (1988), 41 Ohio App. 3d 218, in support of her argument.

In *Gannet,* an executive session was held for which the admitted purpose was to discuss budget cuts through reduction of the school system workforce in general. The court found that such a purpose was invalid in that R.C. 121.22(G)(1) allows executive sessions only when the sole purpose is the consideration of a specific individual's employment. *Gannet* did not hold that an executive session is illegal, as appellant would have it, if held for the purpose of discussing the termination of a specific individual's employment *by reason of* budgetary considerations, as is the case here.

Appellant argues that the admitted reason for holding the executive session evidenced a dual purpose, one of which is not enumerated as an exception to the open meeting requirement, and that therefore the meeting was illegal. This argument is untenable. By appellant's reasoning, an employee's termination could be discussed safely in executive session only if there were no underlying reason for considering such termination, as any such reason could be construed as a separate purpose.

Appellant further argues that the executive session was illegal because the board failed to provide her with notice and a hearing, which she claims is required under R.C. 121.22(G)(1). This argument is also without merit. The Supreme Court of Ohio, in *Matheny* v. *Bd of Edn.* (1980), 62 Ohio St. 2d 362, stated that:

"* * * we do not believe that the words 'unless the public employee * * * requests a public hearing * * *' were intended to grant the right to a hearing where none existed previously, as in the instance of contract considerations of non-tenured teachers.

"* * *." *Id.* at 367.

The court further observed that "the term 'public hearing' in subdivision (G)(1) of this statute refers only to the hearings elsewhere provided by law." *Id.* at 368. As discussed under the first assignment of error, appellant was an unclassified civil servant, and therefore by law had no right to continued employment, nor to any procedural safeguards before termination.

Appellant contends that *Matheny* is inapplicable here because that case involved a nontenured teacher while the present case involves a nonteaching employee. As we read *Matheny* as establishing a general principle applicable beyond its specific facts, and as appellant offers no rationale to justify distinguishing *Matheny* on its facts, we find no merit in this contention.

Appellant's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

"The trial court erred in granting summary judgment to defendant since a genuine issue of material fact exists as to whether or not appellant's right to due process of law was violated by appellees."

The legal principle dispositive of this issue was expressed by the Supreme Court of Ohio in *State ex rel. Trimble, supra* at 285:

"Appellant's due process claim is without merit. The requirements of procedural due process--including the right to a hearing claimed by appellant--'apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.' *Board of Regents* v. *Roth* (1972), 408 U.S. 564, 569. To have a protected property interest in a benefit such as continued employment by a state agency, an individual must have more than 'an abstract need or desire for it' or a 'unilateral expectation of it.' He must, instead, 'have a legitimate claim of entitlement to it.' *Roth, supra,* at page 577.

"* * *."

As we have found that appellant has no such legitimate claim of entitlement to continued employment, the third assignment of error is overruled.

We find that there was no error in the trial court's ruling that no genuine issues of material fact remained, and that summary judgment was properly granted to the defendants below as a matter of law pursuant to Civ. R. 56(C).

*Judgment affirmed.*

REECE, P.J., and QUILLIN, J., concur.