**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Barga v. St. Paris Village Council*, **Slip Opinion No. 2024-Ohio-5293.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5293

BARGA, APPELLANT AND CROSS-APPELLEE, *v.* VILLAGE COUNCIL OF THE VILLAGE OF ST. PARIS, APPELLEE AND CROSS-APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Barga v. St. Paris Village Council*, Slip Opinion No. 2024-Ohio-5293.]**

*Open Meetings Act, R.C. 121.22—R.C. 737.171—When a public employee has a statutory right to a public hearing, the plain terms of R.C. 121.22(G)(1) apply; the public body may not enter into executive session to discuss any of the statutorily enumerated employment actions when the public employee requests a public hearing, but, rather, the public body must consider the employment action in a public hearing—Court of appeals' judgment reversed and cause remanded to village council for public hearing.*

(No. 2023-0637—Submitted March 12, 2024—Decided November 8, 2024.)

APPEAL from the Court of Appeals for Champaign County,

No. 2022-CA-14, 2023-Ohio-1067.

_____

DEWINE, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER and DETERS, JJ., joined. DONNELLY, J., concurred in judgment only, with an opinion. STEWART, J., dissented, with an opinion. BRUNNER, J., dissented, with an opinion.

**DEWINE, J.**

{¶ 1} The Ohio Open Meetings Act requires "public officials" to "conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law." R.C. 121.22(A). The Act further permits a public body to enter into executive session "to consider" the dismissal of a public employee "unless the public employee . . . requests a public hearing." R.C. 121.22(G)(1).

{¶ 2} This case involves the termination of a police chief at a village-council meeting. The chief requested a public hearing, but the council chose to conduct only some of the proceedings in public. After the presentation of evidence at an open council meeting, the village council adjourned to executive session to consider the charges against the chief and to reach its decision.

{¶ 3} The question is whether this procedure comports with the Open Meetings Act. We hold that it does not. Under the plain terms of the Open Meetings Act, upon request by the chief, the village council was required to consider the matter at a public hearing. The Second District Court of Appeals held otherwise, so we reverse its judgment and remand the matter to the village council for a public hearing.

## I. BACKGROUND

{¶ 4} Erica Barga served as police chief for the Village of St. Paris from February 2018 to November 2020, when Mayor Brenda Cook placed her on administrative leave. According to the mayor, Barga refused to take direction from the mayor and otherwise failed to properly perform her duties. Barga denied any

misconduct and accused the mayor of harassing and belittling her, among other things.

{¶ 5} A statute sets forth the procedures for the removal or suspension of a police chief of an Ohio village, such as St. Paris.  *See* R.C. 737.171.  Under that statute, (1) a mayor may bring written charges against a village police chief, (2) the charges must be heard at a regularly scheduled council meeting, (3) the police chief has a right to appear and defend against the charges, and (4) the chief may be removed or suspended only upon a vote of two-thirds of the village council.  Mayor Cook initiated this statutory procedure by filing five charges against Barga, alleging insubordination and neglect of duty, and seeking removal of Barga as police chief. Barga filed a written memorandum with the council requesting a public hearing to address the mayor's charges.

{¶ 6} The hearing lasted several days, often continuing late into the night. During the hearing, the mayor and Barga had the opportunity to testify, examine witnesses, and present evidence.  Once the hearing concluded, the council voted to deliberate behind closed doors through a process known as "executive session." After deliberating in private, councilmembers emerged and took a formal vote on the charges against Barga.  By a two-thirds vote, the council removed Barga from her position as police chief and terminated her employment with the village.

{¶ 7} Barga appealed the village council's decision to the common pleas court under R.C. 737.171.  Among other things, she asserted that the Open Meetings Act precluded the council from deliberating in executive session after she requested a public hearing.  The court rejected that argument, concluding that under this court's decision in *Matheny v. Frontier Local Bd. of Edn.*, 62 Ohio St.2d 362 (1980), Barga lacked any "substantive or procedural right to have the entire disciplinary hearing open to the public."  Champaign C.P. No. 2020 CV 142, 34 (May 11, 2022).

**{¶ 8}** On the merits of Barga's challenge to the village council's decision, the common pleas court held that it could not conduct a de novo review, because "[a]n administrative decision is presumed to be valid." *Id.* at 8. The court concluded that Barga had failed to overcome this presumption of validity and affirmed the council's decision to remove Barga as police chief. *Id.* at 8-9, 46, 51.

**{¶ 9}** Barga appealed to the Second District. That court rejected Barga's argument that the village council violated the Open Meetings Act when it deliberated in executive session. 2023-Ohio-1067, ¶ 7-10 (2d Dist.). Relying on an unreported federal district-court decision that analyzed several decisions of this court, the court of appeals held that Barga did not have a right to have the village council conduct its deliberations in public, because the termination hearing was a quasi-judicial proceeding. *Id.* at ¶ 9-10, citing *Gross v. Minerva Park Village Council*, 2012 WL 4009604, *5-7 (S.D.Ohio Sept. 12, 2012).

**{¶ 10}** The court of appeals found, however, that the common pleas court erred by applying a "clearly incorrect" standard of review. *Id.* at ¶ 22. It explained that the common pleas court should have reviewed the village council's decision de novo. *Id.* at ¶ 21-22. Accordingly, the court of appeals remanded the case to the common pleas court for that court to apply the correct standard of review. *Id.* at ¶ 22.

## II. ANALYSIS

**{¶ 11}** We accepted this case on Barga's challenge to the court of appeals' determination that the Open Meetings Act did not require the village council to deliberate in public. *See* 2023-Ohio-2972. We also accepted the village council's cross-appeal, which asserts that the court of appeals erred in its determination of the standard of review. *See id.* Because we agree with Barga that the village council violated the Open Meetings Act, we do not reach the cross-appeal.

**A. Under the Plain Language of the Open Meetings Act, the Village Council Was Required to Conduct Its Deliberations in Public**

{¶ 12} The plain language of the Open Meetings Act would seem to make this an easy case. The Act directs that it "shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law." R.C. 121.22(A). A "public body" is defined to include a "council" of a "municipal corporation." R.C. 121.22(B)(1)(a). And a "meeting" is defined as "any prearranged discussion of the public business of the public body by a majority of its members." R.C. 121.22(B)(2).

{¶ 13} The Act further provides that the members of a public body may hold an executive session "[t]o consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee . . . or the investigation of charges or complaints against a public employee . . . , *unless* the public employee . . . requests a public hearing." (Emphasis added.) R.C. 121.22(G)(1).

{¶ 14} In this case, the mayor initiated proceedings under R.C. 737.17 to terminate Barga's employment. Under that statute, charges against a village police chief must be heard "at the next regular meeting of the legislative authority" that occurs not less than five days after the charges have been served on the chief.

{¶ 15} The proceedings at issue fit comfortably within the plain language of the Open Meetings Act. A regular meeting of the village council qualifies as a public meeting. *See* R.C. 121.22(C) ("*All meetings* of any public body are declared to be *public* meetings . . . ." [emphasis added]). And the exception in the Open Meetings Act to hold an executive session does not apply here, because Barga requested a public hearing. *See* R.C. 121.22(G)(1). Thus, the plain terms of the Open Meetings Act required the village council to conduct its deliberations in public.

**{¶ 16}** In concluding otherwise, the common pleas court and the court of appeals relied on caselaw that it read as exempting the village council's private deliberations on Barga's termination from the scope of the Open Meetings Act. We now turn to that caselaw.

### B. Our Caselaw Does Not Compel a Different Result

**{¶ 17}** The common pleas court relied on this court's decision in *Matheny* to conclude that the village council did not violate the Open Meetings Act, because no statute existed "independent of R.C. 121.22" that "entitled [Barga] to a public hearing." Champaign C.P. No. 2020 CV 142 at 34 (May 11, 2022). In *Matheny*, this court dealt with a challenge brought by several nontenured teachers to the determinations of two school boards not to renew the teachers' employment contracts. *Matheny*, 62 Ohio St.2d at 362-363. Two of the teachers had requested in writing that all discussions regarding the renewal of their contracts take place in public. *Id.* at 362. The school boards met in executive session to discuss the teachers' employment status and then met in open session and voted not to renew the teachers' contracts. *Id.* at 363.

**{¶ 18}** The court rejected the teachers' claims that the school boards violated the Open Meetings Act by failing to give them prior notice of the discussions about their employment status and by failing to deliberate in public. *Id.* at 364-368. In doing so, we found that the Open Meetings Act was not intended to displace other provisions of law dealing with teacher termination. *Id.* at 366-367. Drawing a distinction between the words "hearing" and "meeting," the court concluded that the reference to "public hearing" in R.C. 121.22(G)(1) "refers only to the hearings elsewhere provided by law." *Id.* at 368. Because the then "existing statutes" governing teacher-contract renewals for nontenured teachers imposed "'no requirement'" on school boards to provide nontenured teachers "'with notice of, or opportunity to be heard at, the meeting where his reemployment is being considered,'" *id.* at 366, quoting *DeLong v. Southwest School Dist. Board of Edn.*,

36 Ohio St.2d 62, 64 (1973), *superseded by statute on other grounds as stated in Kiel v. Green Local School Dist. Bd. of Edn.*, 1994-Ohio-21, ¶ 18, the court concluded that R.C. 121.22(G)(1) did not create an independent right to a public hearing, *id.* at 366-368.

{¶ 19} We reaffirmed our holding in *Matheny* in *Stewart v. Lockland School Dist. Bd. of Edn.*, 2015-Ohio-3839, ¶ 9-10, 15, rejecting an argument by an employee that was similar to the argument advanced in *Matheny*. The court concluded that because no statute outside of the Open Meetings Act granted the employee a right to a public hearing, the employee could not rely on the Open Meetings Act to require a public hearing. *Stewart* at ¶ 10.

{¶ 20} Barga has not asked us to revisit our decisions in *Matheny* and *Stewart*, and thus we have no occasion to do so. Instead, she argues that those cases are distinguishable because she had a right to a public hearing under R.C. 737.171. We agree.

{¶ 21} R.C. 737.171 provides that termination proceedings for a village police chief must take place at a regular meeting of the village's legislative authority. The village council is a public body with meetings "open to the public at all times." R.C. 121.22(C). Thus, unlike the teachers in *Matheny* and the employee in *Stewart*, Barga had a right to a hearing "elsewhere provided by law," *Matheny*, 62 Ohio St.2d at 368. Because Barga had a right to a public hearing under R.C. 737.171, nothing in *Matheny* or *Stewart* authorized the village council to hold an executive session once Barga had requested a public hearing.[1] *Accord Conner v. Lakemore*, 48 Ohio App.3d 52, 54 (9th Dist. 1988).

---

1. The second dissent surmises that "nothing in [R.C. 737.171] confers on Barga the right to request a public hearing" and so she must not have been entitled to one. Dissenting opinion of Brunner, J., ¶ 46. The first dissent argues that while R.C. 737.171 entitles Barga to request a public hearing, the public component of a hearing under that statute does not include the council's deliberations. *See* dissenting opinion of Stewart, J., ¶ 36-37. But these arguments overlook the relationship between R.C. 737.171 and 121.22. The former requires that any charges filed under the statute be heard "at

{¶ 22} The court of appeals provided a different rationale for rejecting Barga's claim of entitlement to a public hearing. It concluded that the Open Meetings Act did not apply at all because the termination proceeding under R.C. 737.171 was quasi-judicial in nature. 2023-Ohio-1067 at ¶ 9-10 (2d Dist.). In doing so, it relied almost exclusively on *Gross*, a federal district-court decision. In *Gross*, the court noted that it was "undisputed" that the Ohio Supreme Court had not addressed the narrow issue in that case: "a public employee, who requests a 'public hearing,' to which he is statutorily-entitled, before a legislative authority, which deliberates the evidence in executive session, despite the employee's objection to the contrary." *Gross*, 2012 WL 4009604, at *5. Thus, it identified its task as predicting "what the Ohio Supreme Court would do if presently faced with [this] question[]." *Id.* at *4. After reviewing our precedent, the federal court extracted the following rule: "When a public body is acting in a quasi-judicial capacity, the adjudicatory hearing process—including the deliberations that follow—is not a 'meeting' under the [Open Meetings Act]; thus these deliberations may be held privately in executive session." *Id.* at *7.

{¶ 23} The court of appeals adopted the *Gross* rationale and found the quasi-judicial reasoning dispositive. It explained:

> In this case, as in *Gross*, Barga was statutorily entitled to a hearing as provided by R.C. 737.171. Further, she requested a public hearing. A public hearing was conducted during which Barga was represented by counsel. She was permitted to present evidence,

---

the next regular meeting of the legislative authority," R.C. 737.171, and the latter "require[s]" public officials to "conduct all *deliberations* upon official business only in open meetings" absent an exception (emphasis added), R.C. 121.22(A). Therefore, because Barga has a statutory right to have the charges filed against her heard at the "next regular meeting" of the village council, R.C. 737.171, and any "deliberations" at that meeting must be public, R.C. 121.22(A), Barga had a statutory right to a have the charges filed against her heard and deliberated on at a public meeting.

> examine witnesses, and present argument. Council deliberated and exercised its judgment to determine whether to dismiss the charges or uphold the charges and dismiss Barga. Council's decision was appealable, and Barga exercised her right to appeal. Thus, the record supports a finding that the hearing was a quasi-judicial proceeding and that Council was not bound by the Open Meetings Act to conduct its deliberations in public.

2023-Ohio-1067 at ¶ 10 (2d Dist.).

{¶ 24} The idea that there is a quasi-judicial exception to the Open Meetings Act traces to our decision in *TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision*, 1998-Ohio-445. In that case, we considered whether the Open Meetings Act applied to adjudicatory proceedings at the Board of Tax Appeals ("BTA"). *Id.* at ¶ 15. We held that it did not, explaining that the BTA, "like all judicial bodies, requires privacy to deliberate" and that for this reason, "the [Open Meetings Act] does not apply to adjudications of disputes in quasi-judicial proceedings, such as at the BTA." *Id.* at ¶ 20.

{¶ 25} We later held that the quasi-judicial exception applies to certain adjudicatory proceedings before election boards. In *State ex rel. Ross v. Crawford Cty. Bd. of Elections*, 2010-Ohio-2167, ¶ 16, we concluded that the board of elections had exercised quasi-judicial authority because it was statutorily required "to hold a hearing resembling a judicial trial" on a challenge to an elector's eligibility to vote. We opined that the Open Meetings Act "'is only applicable to public bodies performing public functions at public meetings.'" *Id.* at ¶ 24, quoting *Walker v. Muskingum Watershed Conservancy Dist.*, 2008-Ohio-4060, ¶ 27 (5th Dist.). Thus, we held that because the quasi-judicial proceeding at issue was not a meeting for purposes of the Open Meetings Act, the board was not required to vote and deliberate in public. *Id.* at ¶ 30-32.

**{¶ 26}** The federal court's decision in *Gross* read *TBC Westlake* and *Ross* broadly as completely exempting quasi-judicial proceedings from the Open Meetings Act. *See Gross*, 2012 WL 4009604, at *5-7. We decline to take such a broad view.

**{¶ 27}** In declining to do so, we are mindful that the quasi-judicial exception to the Open Meetings Act is purely judge-made law, with no basis in the text of the Open Meetings Act. Thus, we must tread cautiously before widening the exception.

**{¶ 28}** Moreover, to apply the exception here would fly in the face of the plain language of the Open Meetings Act. Recall that the Open Meetings Acts requires all public officials to deliberate in public. *See* R.C. 121.22(A). And recall also that R.C. 121.22(G)(1) specifically permits an executive session "[t]o consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee . . . or the investigation of charges or complaints against a public employee . . . , unless the public employee . . . requests a public hearing."

**{¶ 29}** The holdings of the court of appeals below and of the federal court in *Gross* render R.C. 121.22(G)(1) meaningless. Under *Matheny*, there is no right to a public hearing under R.C. 121.22(G)(1) unless another statute provides for a public hearing by which an employee may challenge an employment decision. *Matheny*, 62 Ohio St.2d at 368. But under the court of appeals' (and the *Gross* court's) reading of the Open Meetings Act, where, as here, such a statute does exist, the Open Meetings Act does not apply at all.[2]

---

2. The first dissent reads the Open Meetings Act the same way. *See* dissenting opinion of Stewart, J., at ¶ 41. It asserts that "*TBC Westlake* should control the outcome of this case." *Id.* at ¶ 39. But it does not appreciate the fact that, unlike in this case, there was no additional statute that provided for a public hearing in *TBC Westlake*. Neither was there one in *Ross*. Thus, for us to hold that *TBC Westlake* controls the outcome of this case, we *would* have to widen the quasi-judicial exception to cases like this one. And doing so would lead to the Catch-22 described in the paragraph above.

**{¶ 30}** We decline to render R.C. 121.22(G)(1) a dead letter. *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) ("[i]f possible, every word and every provision is to be given effect" [boldface omitted]); *United States v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used."); *Boley v. Goodyear Tire & Rubber Co.*, 2010-Ohio-2550, ¶ 21, quoting *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373 (1917) (a "'court should avoid that construction which renders a provision meaningless or inoperative' "). We hold that when a public employee has a statutory right to a public hearing, the plain terms of R.C. 121.22(G)(1) apply. The public body may not enter into executive session to discuss any of the statutorily enumerated employment actions when the public employee requests a public hearing. Rather, the public body must "consider" the employment action in a public hearing. R.C. 121.22(G)(1).

**{¶ 31}** Here, Barga requested a public hearing. Yet the village council chose to consider the charges against her in private. In doing so, it violated the plain terms of R.C. 121.22(G)(1). As a consequence, the village council's decision to terminate Barga's employment is invalid, and remand is necessary to allow the village council to consider the issue in compliance with the Open Meetings Act. *See* R.C. 121.22(H) ("A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for a purpose specifically authorized in [R.C. 121.22] . . . ."); *see also Superior Metal Prods., Inc. v. Admr., Ohio Bur. of Emp. Servs.*, 41 Ohio St.2d 143, 146 (1975) ("This court holds that the power to reverse and vacate decisions necessarily includes the power to remand the cause to the decision maker."); *Conner*, 48 Ohio App.3d at 53-54 (invalidating a village council's decision made in executive session to uphold a mayor's dismissal of a police chief after the chief requested a public hearing).

### III.  CONCLUSION

{¶ 32} We reverse the judgment of the Second District Court of Appeals, vacate the village council's action terminating Barga, dismiss the cross-appeal as moot, and remand this matter to the Village Council of the Village of St. Paris for a public hearing.

Judgment reversed

and cause remanded.

_____

**DONNELLY, J., concurring in judgment only.**

{¶ 33} I write separately to express my concerns about the possible chilling effect that the majority opinion will have on the full and frank deliberations of members of a public body in certain employment matters involving public employees under R.C. 121.22(A), (C), and (G)(1).  Some deliberations are best done outside the public sphere, an obvious example being jury deliberations. Similarly, a village council discussing the credibility of witnesses and the weight of evidence in an employment matter involving the village's police chief might best be conducted in executive session.  That is, of course, a policy matter for the General Assembly.

_____

**STEWART, J., dissenting.**

{¶ 34} I disagree with the majority's determination that appellee and cross-appellant, the Village Council of the Village of St. Paris, had to deliberate publicly on the charges, evidence, and arguments presented at appellant and cross-appellee Erica Barga's removal hearing.  Accordingly, I dissent.

{¶ 35} To be clear, Barga was afforded a public hearing on the charges levied against her.  For several days in a setting that was open to the public, the village council heard testimony and evidence on the charges and listened to the parties' respective arguments.  The components of a "hearing," as contemplated by

R.C. 737.171, are minimal and uncomplicated and were met here. R.C. 737.171 states that

> [c]harges filed under this section shall be heard at the next regular meeting of the legislative authority occurring not less than five days after the date those charges have been served on the person against whom they are made. The person against whom those charges are filed may appear in person and by counsel at the hearing, examine all witnesses, and answer all charges against that person.

In summary, Barga was entitled (1) to a presentation of the charges at a hearing, (2) to appear in person and with counsel at the hearing, and (3) to examine all witnesses and otherwise contest the charges at the hearing. Barga's hearing contained each of these components and was conducted in public.

{¶ 36} R.C. 737.171 also states that "[a]t *the conclusion of the hearing*, the legislative authority may dismiss the charges, suspend the accused from office for not more than sixty days, or remove the accused from office." (Emphasis added.) By its own language, R.C. 737.171 does not include the final decision of the legislative authority as a component of the "hearing." Rather, R.C. 737.171 contemplates that reaching a final decision is a separate act from the hearing and that it occurs *after* the hearing is over. Thus, to request a "public hearing" under R.C. 737.171 means only to request a public presentation of the charges, evidence, and arguments before the legislative authority. That is what Barga received here.

{¶ 37} R.C. 737.171 neither states nor implies that a "hearing" on the charges includes the legislative authority's deliberations on the evidence and arguments supporting or opposing those charges. And asking for a "public hearing" does not change the fact that a hearing under R.C. 737.171 fails to include the legislative authority's deliberation process. Despite this fact, the majority opinion

concludes that Barga was entitled to a public display of the village council's deliberation process because R.C. 121.22(A) contemplates that public officials will "'conduct all *deliberations* upon official business only in open meetings' absent an exception." (Emphasis in original.) Majority opinion, ¶ 21, fn. 1, quoting R.C. 121.22(A). But this type of deliberation process is, and has been for years now, *excepted* from the Open Meetings Act, R.C. 121.22, by precedent from this court. *See TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision*, 1998-Ohio-445.

{¶ 38} *TBC Westlake* involved an appeal relating to the valuation of property for taxation purposes and addressed the applicability of the Open Meetings Act to such proceedings. We observed that an adjudication of the Board of Tax Appeals ("BTA") is a quasi-judicial proceeding[3] and that although the BTA's hearings are open to the public, "like all judicial bodies, [the BTA] requires privacy to deliberate, *i.e.*, to evaluate and resolve, the disputes." *Id.* at ¶ 20. We relied on a Tenth District Court of Appeals' decision in concluding that R.C. 121.22 "does not apply to adjudications of disputes in quasi-judicial proceedings, such as at the BTA." *Id.*, citing *Angerman v. State Med. Bd. of Ohio*, 70 Ohio App.3d 346 (10th Dist. 1990). In *Angerman*, the Tenth District considered an almost identical issue to the present case. In that case, the State Medical Board of Ohio decided to revoke a physician's license to practice medicine following a public hearing. On appeal of the medical board's decision, the physician asserted that the medical board had violated R.C. 121.22 because its deliberations were not conducted in a meeting open to the public. The Tenth District concluded that "[a]lthough R.C. 121.22 makes no general exception for judicial or quasi-judicial deliberations, . . . it necessarily follows that such deliberations are not intended to be within the purview of the open-meeting requirement of R.C. 121.22." *Angerman* at 351. The Tenth

---

3. We have previously described a quasi-judicial proceeding as one "in which notice, a hearing, and the opportunity for the introduction of evidence have been given." *AT&T Communications of Ohio, Inc. v. Lynch*, 2012-Ohio-1975, ¶ 8.

District determined that the reference in R.C. 121.22(G)(1) to a licensee requesting a "public hearing" related to the "hearing itself and not to deliberations of the adjudicatory body after the hearing is completed." *Angerman* at 352. The Tenth District succinctly held that

> the deliberations of a quasi-judicial administrative tribunal as to the action to be taken following a public hearing upon charges against a licensee need not be open to either the licensee or the public, although the final action or vote of the quasi-judicial tribunal must be conducted in an open meeting.

*Id.*

{¶ 39} Our decision in *TBC Westlake* should control the outcome of this case. However, instead of following this court's precedent, the majority deflects from our conclusions in *TBC Westlake* by raising vague points with little to no legal support. To begin with, the majority takes issue with the quasi-judicial exception to the Open Meetings Act announced in *TBC Westlake* because it is "judge-made law." Majority opinion at ¶ 27. While this is true, the fact that the quasi-judicial exception stems from a decision of this court rather than the explicit language of R.C. 121.22 makes no difference to the precedential value of *TBC Westlake*. Additionally, the General Assembly legislates against the backdrop of judicial decisions and is presumed to have full knowledge of our interpretation of statutes. *See Wayt v. DHSC, L.L.C.*, 2018-Ohio-4822, ¶ 23, citing *State ex rel. Huron Cty. Bd. of Edn. v. Howard*, 167 Ohio St. 93, 96 (1957). At no point has the General Assembly amended R.C. 121.122 to make clear that the quasi-judicial exception should not apply to *deliberations* in adjudicatory proceedings conducted by members of a public body.

**{¶ 40}** Going further, the majority accuses the Second District Court of Appeals in its decision below of somehow "widening" the quasi-judicial exception and thus rendering R.C. 121.22(G)(1) meaningless. Majority opinion at ¶ 27, 29. But the Second District did nothing of the sort. The Second District never held that there is a quasi-judicial exception to R.C. 121.22(G)(1)'s requirement that there be a "public hearing"—that is, the public presentation of charges, evidence, and arguments before the legislative authority—if one is requested by the accused. Instead, the Second District followed the rule announced in *TBC Westlake* and held that the legislative authority's subsequent *deliberations* on the evidence and arguments presented at the public hearing are not subject to public view under the quasi-judicial exception to the Open Meetings Act. *See* 2023-Ohio-1067, ¶ 10 (2d Dist.). Contrary to the majority opinion's assertion, the Second District did not render R.C. 121.22(G)(1) a "dead letter," majority opinion at ¶ 30. Rather, the Second District preserved the right to a public hearing if one is requested under R.C. 121.22(G)(1) and declined to extend the right of public access beyond the hearing itself to include the deliberation process.

**{¶ 41}** Nothing about the Second District's decision specifically conflicts with the language of R.C. 121.22(G)(1). R.C. 121.22(G)(1) states that members of a public body may enter into executive session

> [t]o consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee, official, licensee, or regulated individual, unless the public employee, official, licensee, or regulated individual requests a public hearing.

By its language, R.C. 121.22(G)(1) ties the legislative authority's "consider[ation]" of the public official's employment and removal from office to the hearing itself. Again, and as explained above, a hearing under R.C. 737.171 consists of only the presentation of the charges, evidence, and arguments supporting or opposing the charges. It does not include deliberations on the charges, evidence, and arguments. Thus, it appears that when R.C. 121.22(G)(1) states that members of a legislative authority may enter into executive session "[t]o consider" the employment of a public official unless a public hearing is requested, what the statute is allowing for is simply a closed-door hearing on the charges, evidence, and arguments rather than a public hearing on those elements, unless the person subject to removal specifically requests a public hearing. This interpretation is consistent with this court's decision in *Matheny v. Frontier Local Bd. of Edn.*, 62 Ohio St.2d 362 (1980), in which we distinguished between a "meeting" and a "hearing" for the purposes of R.C. 121.22 and stated that "the term 'public hearing' in subdivision (G)(1) of this statute refers only to the hearings elsewhere provided by law," *id*. at 368. The hearing that Barga was entitled to is outlined in R.C. 737.171. That statute gives Barga the right to the presentation of charges, evidence, and arguments but says nothing about deliberations being made part of the hearing itself. Thus, it can hardly be said that R.C. 121.22(G)(1) somehow operates to entitle Barga to public deliberations on the evidence as part of her "hearing" on the charges when R.C. 737.171 itself does not mention deliberations as part of the hearing process.

{¶ 42} Lastly, the opinion concurring in judgment only is correct to point out that "[s]ome deliberations are best done outside the public sphere, an obvious example being jury deliberations," opinion concurring in judgment only, ¶ 33. The only judicial body that R.C. 121.22 explicitly exempts from the reach of the Open Meetings Act is that of a grand jury. *See* R.C. 121.22(D)(1) ("This section does not apply to . . . [a] grand jury . . . ."). Petit juries and judicial panels, for example, are not exempted in the statute. Historically, hearings before a grand jury and

deliberations on the evidence presented before a grand jury are not subject to public view. *See In re T.R.*, 52 Ohio St.3d 6, 14 (1990). Whereas hearings and/or trials before petit juries and judicial panels are subject to public view, the deliberations of petit juries and judicial panels have also historically been closed to the public. *See id.* The General Assembly's decision to exempt only one judicial body, grand juries, from the Open Meetings Act makes sense only in a context in which it is understood that R.C. 121.22 does not apply to *deliberations* in quasi-judicial proceedings. By exempting grand juries from R.C. 121.22, the General Assembly guarantees that any hearing before a grand jury remains closed to the public. By not exempting other judicial bodies, such as petit juries and judicial panels, the General Assembly allows for public hearings before those bodies, yet there is still a historical understanding that the deliberations of those bodies on the evidence and arguments will remain confidential and closed to public view. If the quasi-judicial exception for deliberations is removed from our understanding of R.C. 121.22, then suddenly the Open Meetings Act may command that jury deliberations be conducted in public and that the public be invited to attend the confidential conferences of judges sitting on judicial panels. Naturally, this would also include the discussions the seven justices of this court engage in concerning the cases we hear. Because this is not how the Open Meetings Act was intended to operate, I dissent from the majority opinion.

---

**BRUNNER, J., dissenting.**

{¶ 43} The majority seems to recognize that appellant and cross-appellee, Erica Barga, may not request a public hearing to resolve the charges brought against her by the mayor of the Village of St. Paris, given that it cites *Matheny v. Frontier Local Bd. of Edn.*, 62 Ohio St.2d 362, 368 (1980), in which we stated that "the term 'public hearing' in subdivision (G)(1) of [R.C. 121.22] refers only to the hearings elsewhere provided by law." This means that unless a statute outside of the Open

Meetings Act, R.C. 121.22, confers on Barga the right to a public hearing under the circumstances presented here, she has no right to request one.

{¶ 44} The majority attempts to avoid reaching this conclusion by instead reasoning that R.C. 737.171 gives Barga the right to a public hearing, because in the majority's view, that statute provides for a hearing to be conducted on the type of charges at issue here at a regular meeting of the village council and regular meetings are subject to the requirements of the Open Meetings Act. But even though a hearing may occur at a public meeting, that does not mean that the hearing will also be public, unless another statute requires the hearing to be a public hearing.

{¶ 45} The majority's reasoning to the contrary is unsupported by the text of the applicable statutes. To apply the statutes as the majority has is to extend our judicial authority beyond the limits permitted by law.

{¶ 46} Barga's termination as police chief of the Village of St. Paris is governed by R.C. 737.171 ("the removal statute"). The removal statute authorizes the mayor of a village to file charges alleging insubordination, incompetency, dishonesty, neglect of duty, or other improper acts by the police chief of the village in the performance of the police chief's official duties. *Id.* The removal statute directs when the charges are to be heard: "at the next regular meeting of the legislative authority occurring not less than five days after the date those charges have been served on the person against whom they are made." *Id.* And the removal statute provides that at the conclusion of the hearing, the legislative authority may dismiss the charges or suspend or remove the accused person from office. *Id.* These provisions set forth how appellee and cross-appellant, the Village Council of the Village of St. Paris, is to bring and schedule a hearing on the charges, but nothing in the removal statute confers on Barga the right to request a public hearing.

{¶ 47} At the same time, other provisions of the removal statute confer specific rights on Barga. For example, she has the right to "appear in person and by counsel at the hearing, examine all witnesses, and answer all charges," R.C.

737.171. She also has the right to appeal her removal from office to the common pleas court within ten days of the village council's determination. *Id.* But nothing in the removal statute gives Barga the right to request a public hearing.

{¶ 48} The majority reasons that the Open Meetings Act applies to Barga's hearing on the charges brought against her because the removal statute specifies that the hearing is to take place "at the next regular meeting" of the village council, R.C. 737.171. Under this reasoning, the majority assumes that Barga's hearing on the charges was subsumed in the village council's next regular meeting. But the language in the removal statute specifying when and where the hearing will take place does not make the hearing on the charges "open to the public" under R.C. 121.22(C), nor does it give Barga the right to request a public hearing.

{¶ 49} The "next regular meeting" language of R.C. 737.171 prescribes when and where the *charges will be heard*. This provision applies to the *charges*, not the person against whom they are filed. It is a considerable stretch for the majority to conclude that this time-and-place provision creates a procedural right of the accused to have a public hearing protected by the Open Meetings Act, when the removal statute does not mention a "public hearing" at all.

{¶ 50} The removal statute specifies that the legislative authority may take action on the charges "[a]t the conclusion of the *hearing*." (Emphasis added.) R.C. 737.171. This language clearly indicates that the hearing is a separate proceeding from the regular meeting of the legislative authority. *See TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision*, 1998-Ohio-445, ¶ 17, quoting *Westerville v. Hahn*, 52 Ohio App.3d 8, 12 (10th Dist. 1988) ("'even though a public body must open all its meetings to the public, there is a category of gatherings, called "hearings," which do not have to be public'"). Nothing in the removal statute specifies or requires that the hearing be a public hearing or that the person answering the charges may request a public hearing. And the fact that the hearing takes place "at the next regular meeting" of the village council, R.C. 737.171, does not mean the

hearing melds with the village council's meeting that is subject to the Open Meetings Act.

{¶ 51} We know this to be true because for nearly 45 years, this court has held that the terms "meeting" and "hearing" are not interchangeable:

> Since the General Assembly specifically defined, and extensively employed, the term "meeting" in drafting [R.C. 121.22], and since the term "hearing" appears only twice in the statute, both times in reference to situations where a formal hearing is statutorily mandated, we must assume that these terms were intended to have altogether different meanings.

*Matheny*, 62 Ohio St.2d at 368.

{¶ 52} Since our holding in *Matheny*, the General Assembly has amended the Open Meetings Act on more than two dozen occasions, and it has never defined the term "hearing" or clarified or corrected the language of the Open Meetings Act based on our long-standing decision in *Matheny*. The majority criticizes the "quasi-judicial exception to the Open Meetings Act"—an exception that explains the difference between a hearing and a meeting—as "purely judge-made law." Majority opinion, ¶ 27. The majority's decision in this case is the inverse, but more deftly reached, holding that two distinct words make a single law, especially when the General Assembly has declined to undertake the task of clarifying the law or defining "hearing" for nearly half a century.

{¶ 53} Because Barga was not entitled to request a public hearing under the removal statute, there is no reason to look to the Open Meetings Act or its exceptions relating to executive session to decide this appeal. The village council did not violate the Open Meetings Act when it entered into executive session to deliberate on the charges brought against Barga, because the Open Meetings Act

21

does not apply to the hearing.  I would therefore affirm the decision of the Second District Court of Appeals.

**{¶ 54}** As to the village council's cross-appeal regarding the standard of review by the common pleas court, I would also affirm the court of appeals' judgment.  R.C. 737.171 provides Barga the right to appeal the village council's decision to the common pleas court of the same county, which then acts as an administrative appellate court to test the efficacy of the village council's removal decision "on questions of law and fact."  The common pleas court is therefore required to conduct a "rehearing and retrial of [the] cause upon the law and the facts," R.C. 2505.01(A)(3).  The common pleas court explicitly rejected that de novo review under R.C. 2506.04 applies here.  This was in error.

**{¶ 55}** The decision of the Second District Court of Appeals should be affirmed, and this matter should be remanded to the trial court for a de novo review. *See* 2023-Ohio-1067, ¶ 22 (2d Dist.).

––––––––––––––––––

Brannon & Associates, Dwight D. Brannon, and Kevin A. Bowman, for appellant and cross-appellee.

Dinkler Law Office, L.L.C., and Lynnette Dinkler; and Reminger Co., L.P.A., Taylor C. Knight, and David R. Hudson, for appellee and cross-appellant.

––––––––––––––––––

22